1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

Detention Hearing on December 26, 2007

1              UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3

4  - - - - - - - - - - - - - - - - -

5  UNITED STATES,             )

6           Plaintiff,      )

7                      )  CASE NO.

8  V.                  )  2007R00833

9                      )

10  GUZMAN-BAEZ,             )

11           Defendant.      )

12  - - - - - - - - - - - - - - - - -

13

14

15              TRANSCRIPT OF PROCEEDINGS

16  BEFORE THE HONORABLE MAGISTRATE JUDGE NANDOR J. VADAS

17          WEDNESDAY, DECEMBER 26, 2007

18

19

20

21           BEHMKE REPORTING & VIDEO SERVICES

22             BY:  JILL BAIONI, CSR #8812

23             160 SPEAR STREET, SUITE 300

24          SAN FRANCISCO, CALIFORNIA  94105

25                (415) 597-5600

```
 1  APPEARANCES OF COUNSEL:

 2

 3  FOR THE PLAINTIFF:

 4            UNITED STATES DEPARTMENT OF JUSTICE

 5            BY:  DEBORAH DOUGLAS, ESQ.

 6            1301 Clay Street, Suite 340S

 7            Oakland, California  94612-5217

 8            (510) 637-3680

 9

10  FOR THE DEFENDANT:

11            LAW OFFICES OF STEVEN F. GRUEL

12            BY:  STEVEN FRANCIS GRUEL, ESQ.

13            655 Montgomery Street, Suite 1700

14            San Francisco, California  94111-2633

15            (415) 989-1253

16

17            MARTIN RESENDEZ GUAJARDO, ESQ.

18            555 Clay Street

19            San Francisco, California  94111

20            (415) 398-3852

21

22

23

24

25
```

2

```
 1                          ---oOo---
 2          COURT CLERK:  Calling Criminal 07-0794,
 3  Criminal 07-0797.  United States versus Jose de Jesus
 4  Guzman-Baez.
 5          MR. GRUEL:  Good morning, your Honor.  Steve
 6  Gruel on behalf of Mr. Guzman-Baez.
 7          I have some family members outside.  May I
 8  have a moment just to grab them, bring them in?
 9          THE COURT:  Please.
10          MS. DOUGLAS:  Good morning, your Honor.
11  Deborah Douglas representing the United States.
12          THE COURT:  Ms. Douglas, good morning.
13          MR. GRUEL:  Your Honor, also on behalf of
14  Mr. Guzman-Baez is Mr. Martin Guajardo.  Guajardo is
15  an immigration lawyer who is also working with me on
16  this case.
17          THE COURT:  Mr. Guajardo, good morning.
18          MR. GUAJARDO:  Good morning, your Honor.
19          THE COURT:  Why don't we --
20          Folks, you can sit down, please.  Thank you
21  for coming this morning.
22          MR. GRUEL:  Your Honor, where we are in this
23  case, this is a matter that's actually being
24  prosecuted in Oakland.  And at the last calling before
25  Magistrate Brazil we made our first motion or request
```

3

1  for a detention hearing.  And because Magistrate

2  Brazil was out on holiday, he asked that the matter be

3  put over here in San Francisco.  And that's fine, of

4  course.  He wanted to make sure that we let the court

5  know -- we actually thought it was magistrate court.

6  But he wanted us to make sure that we let the court

7  know that there has been no determination, nothing has

8  gone forward with respect to detention in this case

9  whatsoever.  As I understand it, we are starting

10  completely afresh --

11            THE COURT:  Okay.

12            MR. GRUEL:  -- on this matter.  But he wanted

13  that message conveyed to the sitting magistrate judge

14  on this case.

15            THE COURT:  Well, let me ask you.  I see we

16  have a record check from November 9th.  One of the

17  things that's noted in it on Page 2 is that there's an

18  immigration detainer lodged against your client.

19            MR. GRUEL:  Yes.

20            THE COURT:  And I do not see a Pretrial

21  Services report since then.

22            MR. GRUEL:  Yes.  I can address some of those

23  factors.  I notice that the report primarily says that

24  it recommends detention because it doesn't have much

25  information.

4

1          THE COURT:  Right.

2          MR. GRUEL:  And that's what I hope to do this

3   morning, your Honor.  And come up with, hopefully, a

4   recommendation the Court will find will be suitable

5   for allowing his release pending these criminal

6   matters.

7          Your Honor, while there is an immigration

8   hold on him I would say that that is not the end all

9   in this particular case.  Let me begin first of all by

10  just telling you, if I may, some of the facts

11  effecting the defendant to personalize him.  He has

12  been in the United States for 13 years, albeit

13  illegally in this country, but he has been in the

14  United States for 13 years.  He's been residing and

15  working over in Oakland.  And during that time period,

16  he has been running a cabinet factory, a

17  cabinet-making shop, and that's call Pepe's Cabinet

18  Shop.  And he has actually had it running since 1998

19  and he's filed numerous documents with the Oakland

20  city -- city government with respect to his business.

21  As long ago as 1998 he has had that registered and in

22  full operation.

23          Now, I will also add to this, your Honor,

24  that it's my understanding that there is no claim that

25  this gentleman poses any danger to the community.  The

1  only thing I understand as any basis for -- for
2  detention would be a flight risk.  The nature of this
3  case, I should add, has nothing to do with guns, has
4  nothing to do with narcotics.

5         THE COURT:  No.  It appears to be hiring
6  other illegal aliens to work in his cabinet shop.

7         MR. GRUEL:  In exclusive of that.  Exclusive.

8         I would add also, your Honor, that the
9  homeland security knew of Mr. Guzman-Baez as long ago
10 as July 2006 and only arrested him in 2007.  And they
11 have had a, quote, "ongoing investigation" of him for
12 that time period, of which he's done nothing other
13 than make cabinets and hire illegal aliens.  It's not
14 that he has been transporting, making documents
15 himself, or doing anything that one would maybe
16 comport with being someone who is in the business of
17 alien smuggling or something that would be of a more
18 severe or heinous nature.  Nothing more than employing
19 illegal aliens.

20        Now, during the time period that he has been
21 here in the United States, for 13 years, he has three
22 children.  Two children who are born, one -- one is --
23 his common-law wife, she's seven months pregnant.
24 She's here.  Maria.  The second on the far end.
25        What is of interest for purposes of this

6

```
 1   immigration hold that you focused in on right from the
 2   get go is that she was arrested.  She's in the country
 3   illegally.  She was arrested by immigration or
 4   homeland security last week when we, by the way, were
 5   in court before Magistrate Brazil.  And she's out
 6   because she has immigration relief.  She has an
 7   immigration lawyer.  And immigration allowed her out
 8   on her own personal recognizance, if I'm not mistaken.
 9   And she has an immigration court appearance in March
10   of 2008.  And --
11          •      UNIDENTIFIED SPEAKER:   (Unintelligible.)
12                 MR. GRUEL:   Pardon me?
13                 UNIDENTIFIED SPEAKER:   (Unintelligible.)
14                 MR. GRUEL:   March 6 of 2008.
15             The significance of that -- we have copies,
16   if your Honor would like copies.
17                 THE COURT:   No, (unintelligible).
18                 MR. GRUEL:   The significance of that is that
19   that relief, that immigration relief, that immigration
20   attorney, availability of being bonded out or released
21   on his own recognizance exists for him as well given
22   the facts of this case as it does for his wife.
23                 THE COURT:   The problem is is this is this
24   chicken and egg issue.
25                 MR. GRUEL:   Right.
```

1          THE COURT:  Getting him into immigration

2     releases the district court's hold on your client.  We

3     can't get him back if they -- if they choose to deport

4     him right away.  On the other hand, he can't be in

5     front of an immigration judge for bond unless he's out

6     of custody from -- from us.  So it becomes a

7     complicated dynamic that's difficult to solve.

8          Let me ask the government what their position

9     is.  I pretty much understand your position,

10    Mr. Gruel.

11         And I can guess what your position is going

12    to be.

13         MS. DOUGLAS:  Your Honor, the government's

14    position is we vigorously -- we are vigorously arguing

15    for defendant's continued detention.  On November the

16    6th, 2007 a search warrant was executed at Pepe's

17    Cabinets and defendant was arrested on that day.  Very

18    next day defendant was presented before the magistrate

19    judge.  A detainer was filed on that day.  Defendant

20    has been charged an indictment with 11 counts.  Eight

21    of those counts involve harboring of illegal aliens.

22    One of the counts involves possession of a fraudulent

23    immigration document.  And the last two counts involve

24    a fraudulent submission of social security numbers to

25    the City of Oakland Business Tax Office.  In addition

8

1   to that, an information has been filed, 16-count
2   information charging defendant with employing illegal
3   aliens and continuing to employ them.
4           The government -- Pretrial Service's position
5   from the beginning has been detention.  And that is
6   the government's position.  Not only is defendant an
7   illegal alien but every single one of his employees
8   were illegal aliens.  On November 6, 2007 a majority
9   of those employees have been interviewed by ICE.
10  Guzman himself was interviewed.  Guzman made
11  admissions to the government, including that he's an
12  illegal alien without valid documents, including that
13  15 days prior to his arrest he was in Mexico.
14  Defendant was in Mexico for a few weeks.  He reentered
15  the United States only 15 days prior to his arrest on
16  November the 6th.  As this Court is aware, it's very
17  easy to cross from the United States to Mexico through
18  a land border without being detected.  When defendant
19  was arrested he was in possession of a Mexican
20  driver's license and a Mexican -- I'm sorry --
21  identification card, no U.S. government-issued
22  identification.
23          Fraud permeates defendant's activities
24  involving a number of government agencies:  The
25  Department of Homeland Security, the Social Security

9

1 | Administration, IRS, the California Employment
2 | Developmental Department, EDD, and the City of Oakland
3 | Business Tax Office.
4 | Defendant has been required, for example, to
5 | submit quarterly reports to EDD.  ICE has checked --
6 | THE COURT:  Well, I mean, he's running the
7 | cabinet shop in Oakland and he's hiring illegal aliens
8 | and he's showing them to be legal so that he can -- he
9 | can hire them.  That's pretty clear.  Now these are
10 | all misdemeanors.
11 | MS. DOUGLAS:  What's all misdemeanors, your
12 | Honor?  The -- every count, every count in the
13 | indictment is a felony.
14 | THE COURT:  Then I'm -- (unintelligible).
15 | MS. DOUGLAS:  Does the Court have a copy of
16 | the indictment?
17 | THE COURT:  Oh, I have a copy of the
18 | information.
19 | MS. DOUGLAS:  I have a copy of the
20 | indictment, your Honor.
21 | THE COURT:  I'm sorry.  Oh.  All right.
22 | Excuse me, counsel.  I just saw the information.
23 | Excuse me.
24 | MS. DOUGLAS:  As -- as the government
25 | indicated, fraud permeates defendant, all of his

10

1   activities, which goes directly to a risk of flight.

2   The standard of risk of flight, as the Court is aware,

3   is preponderance of the evidence.  The government --

4   the evidence is actually overwhelming for risk of

5   flight.  Defendant has submitted fraudulent quarterly

6   reports to EDD.  The ICE checked every single quarter

7   for 2006.  Every single name that was submitted

8   involved a fraudulent social security number.

9        THE COURT:  But that doesn't -- that goes to

10  the -- to the weight of the evidence, not his flight

11  risk.  You haven't said anything about his flight

12  risk, whether or not you have any evidence that he

13  would go back to Mexico.

14        I'm a little bit concerned that I'm here

15  trying to determine -- I'm going to give counsel an

16  opportunity to explain the immigration situation in a

17  moment -- without the -- without the valuable asset of

18  a Pretrial Services report.  And I'm uncomfortable

19  doing anything until I have that, I'll be quite blunt

20  with you.

21        I think that what I'm going to suggest

22  already is that these arguments are more appropriate

23  after Pretrial Services has interviewed your client

24  and given me an idea of his current status, criminal

25  records check, where he's living, what -- what he

```
 1  intends to do, if he's going to post a security, who
 2  the sureties are and what their positions are in
 3  writing.  I mean, a standard Pretrial Services report
 4  before the court engages in this discussion.  And
 5  that's not to say in any way that the court is in any
 6  way trying to indicate what it will or will not do.  I
 7  would like to have a Pretrial Services report before I
 8  determine what the -- what the actual status of this
 9  person is vis-a-vis a flight risk.
10          MS. DOUGLAS:  Yes, your Honor.
11          If we can proceed because I think there's
12  valuable information that the government has that is
13  not before the Court.
14          THE COURT:  I understand that.  But it's a
15  little bit premature without a Pretrial Services
16  report.  So what I would like to do is I'd like the
17  matter to stand over three days.
18          MR. GRUEL:  Three days.  Let's see, where are
19  we.  January 2nd?
20          THE COURT:  Umm --
21          MR. GRUEL:  The 2nd works for me, your Honor.
22  It would have to be in the afternoon.
23  (Unintelligible.)
24          THE COURT:  Believe it or not, the court is
25  open on the 31st.
```

1                  MR. GRUEL:   31st is going to be a problem for
2   me.
3                  THE COURT:   Well, I -- the 2nd would be fine.
4   I mean, I'm just indicating to you.
5                  MR. GRUEL:   Will your Honor continue with
6   this matter?
7                  THE COURT:   Yes.   I'll hear it on the 2nd.
8                  MR. GRUEL:   If we could do -- you Honor, we
9   have -- just so I can say for the record, your Honor,
10  and the therapist, most of the family members and
11  friends have traveled down from -- up from the
12  Los Angeles area.   In addition to his common-law wife
13  who we've already introduced, we have several aunts
14  and other friends and family members, all, by the way,
15  who are either United States citizens or lawfully
16  permanent residents in this country.   And if we're
17  going to have them interviewed, I would prefer that we
18  do it today (unintelligible).
19                  PRETRIAL SERVICES:   That's fine, your Honor.
20  If the family would like to come up to the 18th floor,
21  to Pretrial Services, we can meet with them briefly
22  after court.
23                  THE COURT:   All right.   Why don't we -- why
24  don't we do that.
25                  Now, Counsel, I'm going to ask you probably

13

1    the most important question.  Again, this is chicken
2    versus the egg question.  Where are you in the
3    immigration proceedings?  You have this felony
4    indictment in front of you.  What is your chances of
5    at least bonding your client out at the time of his
6    initial appearance before the immigration judge?
7          MR. GUAJARDO:  I think the Court's assess- --
8    assessed the problem, you know, very, very well, and
9    that is how do you handle it.  And the Pretrial
10   Services report indicates, at least from what we have
11   today -- this was prepared November 9th -- prior
12   criminal record, that apparently none exists.  So
13   going into immigration, immigration essentially does
14   the same balancing act of flight and danger.  And I
15   think as Mr. Gruel has already pointed out, we don't
16   have the typical drugs or guns involved in this type
17   of case.  We have a situation of hiring illegal
18   aliens.  And so --
19         THE COURT:  Running a cabinet shop in
20   Oakland.  And all of the parties who currently work
21   there, including the owner, are illegal aliens.  And I
22   think that pretty much focuses on what the indictment
23   focuses.  I'm sorry, I only looked at the information,
24   but I assume the indictment is pretty much -- pretty
25   much the same.  (Unintelligible.)

14

1  |  MS. DOUGLAS: You Honor, there's a lot about
2  | the defendant the Court does not know, including his
3  | failures to appear. (Unintelligible) --
4  |  THE COURT: Well, that's what a Pretrial
5  | Service --
6  |  MS. DOUGLAS: -- directly to the issue of
7  | risk of flight.
8  |  THE COURT: That's what a Pretrial Services
9  | report is for.
10 |  MR. GUAJARDO: So my -- my sense, your Honor,
11 | is that we'll have an opportunity to be in front of an
12 | immigration judge, either Judge Yamaguchi or
13 | Judge Murry. Both of them are out there at
14 | 630 Sansome. And they would have an opportunity to
15 | pass on the question of bond with immigration.
16 | Keeping in mind that if we're able to set one here,
17 | they certainly would take into consideration the fact
18 | that he's bonded from here and the amount of the bond
19 | that's been set. I know that from the parties that
20 | are present here today there are at least three of
21 | them that are homeowners that have indicated a
22 | willingness to put their property up for the court.
23 | All the other individuals that are present have all
24 | indicated a willingness to be sureties and are ready
25 | and willing to assist in the pretrial report.

15

```
 1              THE COURT:  I think it's premature at this --
 2         Thank you, Counsel.
 3              I think it's premature at this time for the
 4    court to make any decision without a Pretrial Services
 5    report in the matter.  The matter will stand over
 6    until January 2nd, 9:30, before me for
 7    further detention hearing.
 8              MR. GRUEL:  Your Honor, is it possible to
 9    have that at the end of the calendar only because I'm
10    going to be involved in a U.S. probation report out of
11    Washington D.C.  We're going to be doing it
12    telephonically at 7:00 a.m. their time.  Or 7:00 a.m.
13    my time, 10:00 o'clock out there.  I don't know if it
14    will be done in two hours.  I think it should be but I
15    just want to advise the Court --
16              THE COURT:  (Unintelligible) --
17         Excuse me.
18              What's our calendar look like on the 2nd?
19    (Unintelligible.)
20              All right.  I'll tell you what.  If there's
21    nothing further on the calendar, why don't you contact
22    counsel for the government and then put it on when
23    you're available the 2nd.  Otherwise if it's in fact
24    we do have a calendar on the 2nd -- it doesn't appear
25    to be -- we'll go through the calendar first and take
```

16

1   your matter last.

2        MR. GRUEL:  I appreciate that; your Honor.

3   Thank you.

4        MS. DOUGLAS:  Your Honor, a couple of

5   administrative matters.  The two pending cases before

6   this judge, one -- one, defendant appeared before

7   Judge Jensen on Friday.  I got a phone call from

8   Judge Jensen's deputy clerk on Friday afternoon

9   indicating that Judge Jensen had signed a notice of

10  relatedness and asking us to put that matter over, the

11  information matter over for the same date as the

12  indictment, which is January 25th at 9:00 a.m.

13       The government also submits to this Court

14  that for the same reason set forth by defense counsel

15  on Friday before Judge Jensen that the speedy trial

16  should be excluded on the information until January

17  the 25th as well.

18       THE COURT:  Any objection?

19       MR. GRUEL:  None.

20       THE COURT:  All right.  And have you already

21  excluded time on the indictment?

22       MS. DOUGLAS:  Yes, your Honor.

23       THE COURT:  All right.  Then why don't you

24  prepare an order for exclusion on the information,

25  submit it to me for signature.

17

1          MS. DOUGLAS:  Thank you, your Honor.

2          One final thing.  The government moves to

3   unseal the search warrant under docket 4-07-70640WDB.

4          THE COURT:  Any objection?

5          All right.  That will be unsealed at this

6   time.  The matter will stand over till January 2nd,

7   9:30, or whenever counsel can appear after his

8   probation matter, for further detention hearing.

9          MR. GRUEL:  Thank you, your Honor.

10          THE COURT:  And you will make arrangements

11  with Pretrial Services to have your client

12  interviewed?

13          MR. GRUEL:  We're going to do it right now,

14  your Honor.

15          THE COURT:  All right.  Thank you.

16          MR. GRUEL:  Thank you, your Honor.

17          THE COURT:  Thank you, counsel.

18          (End of transcription.)

19

20

21

22

23

24

25

18

1   STATE OF CALIFORNIA      )

2   COUNTY OF SAN MATEO      )

3        I hereby certify that the transcript is a true

4   record of the audiotaped recording as reported by me, a

5   duly certified shorthand reporter and a disinterested

6   person, and was thereafter transcribed into typewriting

7   by computer.

8        I further certify that I am not interested in

9   the outcome of the said action, nor connected with, nor

10  related to any of the parties in said action, nor to

11  their respective counsel.

12        IN WITNESS WHEREOF, I have hereunto set my hand

13  this 11th day of January, 2008.

14

15

16                   ---------------------------

17                   JILL BAIONI, CSR # 8812

18                        STATE OF CALIFORNIA

19

20

21

22

23

24

25

19

1   STATE OF CALIFORNIA      )

2   COUNTY OF SAN MATEO      )

3            I hereby certify that the transcript is a true

4   record of the audiotaped recording as reported by me, a

5   duly certified shorthand reporter and a disinterested

6   person, and was thereafter transcribed into typewriting

7   by computer.

8            I further certify that I am not interested in

9   the outcome of the said action, nor connected with, nor

10  related to any of the parties in said action, nor to

11  their respective counsel.

12           IN WITNESS WHEREOF, I have hereunto set my hand

13  this 11th day of January, 2008.

14

15

16                    _Jill Baioni/s_

17                    JILL BAIONI, CSR # 8812

18                    STATE OF CALIFORNIA

19

20

21

22

23

24

25

19