1   BARRY J. PORTMAN
    Federal Public Defender
2   SHAWN HALBERT
    Assistant Federal Public Defender
3   555 - 12th Street
    Suite 650
4   Oakland, CA 94607-3627
    Telephone: (510) 637-3500
5
    Counsel for GUZMAN-BAEZ
6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )   No. CR-07-0794 DLJ, 07-0797 DLJ
                                       )
12                  Plaintiff,         )   DEFENDANT'S NOTICE, MOTION AND
                                       )   MEMORANDUM IN SUPPORT OF
13  vs.                                )   MOTION TO SUPPRESS EVIDENCE
                                       )
14  JOSE DE JESUS GUZMAN-BAEZ,         )   Date: April 4, 2008
                                       )   Time: 11:00 a..m.
15                  Defendant.         )   Court: Honorable D. Lowell Jensen
    _____)

16

17  TO:    UNITED STATES OF AMERICA, PLAINTIFF; AND JOSEPH RUSSONIELLO,
           UNITED STATES ATTORNEY; AND DEBORAH DOUGLAS, ASSISTANT UNITED
18         STATES ATTORNEY

19         PLEASE TAKE NOTICE that counsel for defendant Jose de Jesus Guzman-Baez hereby

20  moves this Court for an order suppressing the evidence seized from his business and all other

21  fruits of the search, or, alternatively, granting a *Franks* hearing.

22         The motion is based on this notice and motion, the following memorandum of points and

23  authorities, the Fourth Amendment to the United States Constitution and all other applicable

24  constitutional, statutory and case authority, and such evidence and argument as may be presented

25  at the hearing of this motion.

26  / / /

1

**INTRODUCTION**

2  On November 6, 2007, federal agents searched Mr. Guzman-Baez's business pursuant to

3  a search warrant.  They seized two boxes of documents and cash and made images of three

4  computer hard drives.  They also conducted interrogations, including of Mr. Guzman-Baez,

5  based on the materials they seized.  Because the warrant did not establish probable cause to

6  search the business, all fruits of the unlawful search must be suppressed.  If the Court does not

7  suppress the fruits of the unlawful search based on the lack of probable cause in the affidavit, the

8  Court should conduct a *Franks* hearing because the warrant included material misstatements and

9  omitted material facts.

10

**FACTS**

11  On October 29, 2007, Immigration and Customs Enforcement ["ICE"] agent Michael

12  Barge submitted to a federal magistrate an affidavit in support of a warrant to search Mr.

13  Guzman-Baez's business, Pepe's Cabinets, in Oakland.  *See* Affidavit in Support of Search

14  Warrant ["Affidavit"], attached as Exhibit A.  Agent Barge had been an ICE agent for three

15  years.  Affidavit ¶ 1.  There is no indication in the affidavit that he had ever before been

16  responsible for preparing a search warrant affidavit.

17  The affidavit alleged that there was probable cause to believe that Mr. Guzman-Baez has

18  violated three federal statutes.  Affidavit ¶ 8.  The affidavit described each alleged offense:

19
20
21  8 U.S.C. § 1324(a)(1)(A)(iii) makes it a crime to conceal, harbor, or shield from detection, or to attempt to conceal, harbor, or shield from detection, an alien in any place, knowing or in reckless disregard of the fact that the alien has come to, entered, or remains in the United States in violation of law.

22
23  8 U.S.C. § 1324a(a)(1)(A) makes it a crime for a person . . . to hire . . . for employment in the United States an alien knowing the alien is an unauthorized alien. . . .

24
25
26  8 U.S.C. § 1324a(a)(2) makes it a crime for a person . . ., after hiring an alien for employment . . . to continue to employ the alien in the United States knowing the alien is, or has become, an unauthorized alien with respect to such employment.

1   Affidavit ¶ 8.

2          According to the affidavit, the investigation of Mr. Guzman-Baez began when an

3   unidentified caller reported to an ICE tip line "that Guzman is employing approximately 20

4   illegal aliens at Pepe's Cabinets."[1]  Affidavit ¶ 9.

5          From his investigation, Agent Barge determined that Mr. Guzman-Baez was the owner of

6   Pepe's Cabinets.  Affidavit ¶ 10.  He learned that, as of April 2007, six months before the

7   affidavit, four people received mail at Mr. Guzman-Baez's address:  Mr. Guzman-Baez, his wife,

8   his landlord and Leopoldo Perez-Cruz, whom the affidavit identified as Mr. Guzman-Baez's

9   employee.  Affidavit ¶ 11.  Agent Barge also learned that Mr. Guzman-Baez claimed no more

10  than one full-time employee in city tax records; that he reported to the California Employment

11  Development Department ["EDD"] three employees in the first quarter of 2006 and five

12  employees in the second quarter of 2007; and that a total of 12 social-security numbers

13  submitted to the EDD (including one for Mr. Guzman-Baez) in 2006 and 2007 are or "appear to

14  be fraudulent."  Affidavit ¶¶ 12-14.  In fact, the EDD records from 2006 and 2007 were signed

15  and prepared not by Mr. Guzman-Baez but by professional preparers.[2]  *See* EDD DE 6 Forms,

16  attached as Exhibit B.

17         The bulk of the allegations in the affidavit are based on information provided by an

18  informant, "who is an illegal alien employed at Pepe's since April 2006."  Affidavit ¶ 15.

19  According to the affidavit, the government arrested the informant on December 5, 2006.

20

21         [1]Mr. Guzman-Baez has asked the government for discovery about this apparently
22  anonymous tip, but the government has not to date provided any further information.  The
    anonymous tipster also reported that Mr. Guzman-Baez was himself an illegal alien and that he
23  "pays his undocumented workforce in cash."  Affidavit ¶ 9.  In fact, as the affiant learned, Pepe's
    Cabinets had only eight employees, and Mr. Guzman-Baez did not pay all his employees in cash.
24  Affidavit ¶ 14.

25         [2]Mr. Guzman-Baez's handwritten name does appear on one EDD form, for the first
    quarter of 2006, in a blank space on the bottom of the page, under the signature of the preparer.
26  Exhibit B.

1   Affidavit ¶ 15.  In exchange for his help in this case, the government agreed not to seek removal

2   of the informant or his wife for at least a year.  Affidavit ¶ 16.  The government also agreed to

3   provide the informant and his wife with "short-term employment authorization," and it gave his

4   wife an employment authorization card.  Affidavit ¶ 16.

5          According to the informant, Mr. Guzman-Baez hired him without requiring him to

6   complete an employment eligibility verification form, complete paperwork or show

7   identification.  Affidavit ¶ 17.a.  The informant said that Mr. Guzman-Baez paid him in cash but

8   that at least three other employees were paid by check.  Affidavit ¶ 17.c.  The informant also told

9   the affiant that the informant knew that "all eight Pepe's employees . . . are illegally present in

10  the United States" from conversations he had with the other employees.  Affidavit ¶ 17.b.  There

11  is no indication in the affidavit that Mr. Guzman-Baez participated in or even heard these

12  conversations.

13         The affidavit stated that in March 2007 the informant asked Mr. Guzman-Baez if he

14  would hire a friend who was not authorized to stay in the United States.  Affidavit ¶ 17.d.

15  According to the affidavit, "Guzman stated that he wanted to first determine the work status of

16  another employee who was recently hospitalized."  Affidavit ¶ 17.d.  In fact, all Mr. Guzman-

17  Baez actually said, as captured on an audio recording, was "that he wants to see what happens

18  with the old man."  *See* ICE Report of Investigation, attached as Exhibit D.

19         When the affidavit was prepared, ICE had information indicating that the informant was

20  not truthful.  According to the affidavit, the informant told the affiant that Mr. Guzman-Baez

21  hired the informant in April 2006.  Affidavit ¶ 17.a.  In November 2006, however, the

22  government obtained a rental application for the informant in which he stated that he "has been

23  employed as a carpenter at Pepe's Cabinets for three years."  Report of Investigation, attached as

24  Exhibit C.  The affidavit did not disclose the fact, known to ICE, that the informant had made a

25  material false statement about his employment.

26         Finally, the affidavit included information about a July 27, 2007, stop of Mr. Guzman-

1   Baez and Maria Gamino-Perez, a Pepe's Cabinets employee, by Coast Guard Security Police.

2   Affidavit ¶ 19.  According to the affidavit, Mr. Guzman-Baez's vehicle had expired registration

3   tags, and he was cited for driving with a suspended license.  Affidavit ¶ 19.a., c.  According to

4   the affidavit, both Mr. Guzman-Baez and Ms. Gamino-Perez provided the police with Mexican

5   consular identification cards and admitted that they were not legally in the United States.

6   Affidavit ¶ 19.d.  The affidavit *does not* say that Mr. Guzman-Baez was present when Ms.

7   Gamino-Perez allegedly made this admission.  Completely inconsistently with the alleged

8   admissions that they were in the United States illegally, Mr. Guzman-Baez and Ms. Gamino-

9   Perez were released with a "warning."  Affidavit ¶ 19.d.

10         The affidavit stated that Mr. Guzman-Baez continued to employ Ms. Gamino-Perez

11  "[w]ith full knowledge that [she] is an illegal alien," but offered no facts to support this

12  statement.  In fact, Mr. Guzman-Baez and Ms. Gamino-Perez were separated during most of the

13  time they were detained.  *See* Declaration of Jose de Jesus Guzman-Baez, attached as Exhibit E.

14  Ms. Gamino-Perez speaks English, but Mr. Guzman-Baez does not either speak or understand

15  English.  Guzman-Baez Decl.  Mr. Guzman-Baez did not hear or see anything during this

16  incident about Ms. Gamino-Perez's legal status.  Guzman-Baez Decl.

17         The search warrant was issued on October 29, 2007.  *See* Warrant, attached as Exhibit F.

18  It authorized a search of  Mr. Guzman-Baez's business for evidence of violations of the

19  harboring, employing and continuing-to-employ aliens statutes.  *Id.*  The warrant was executed

20  on November 6, 2007.  *See* Custody Receipts for Seized Property and Evidence, attached as

21  Exhibit G.  ICE agents made images of three computer hard drives and seized five identification

22  cards, two boxes of documents and approximately $45,000.  Further, the government conducted

23  interrogations, including of Mr. Guzman-Baez, arising out of the seized materials.

24                                            **ARGUMENT**

25  **A.     The Warrant Affidavit did not Establish Probable Cause to Believe that Mr.
            Guzman-Baez Committed the Alleged Offenses**

26

1    The Fourth Amendment protects people from unreasonable searches of their "persons,

2  houses, papers, and effects," including businesses.  U.S. Const. amend. IV; *see, e.g.*, *Lo-Ji Sales,*

3  *Inc. v. New York*, 442 U.S. 319, 325 (1979) (reversing denial of suppression motion where

4  warrant did not establish probable cause for search of defendant's adult-bookstore business);

5  *United States v. Bridges*, 344 F.3d 1010, 1014 (9th Cir. 2003) (reversing denial of motion to

6  suppress challenging warrant search of defendant's tax-preparation business).  Under the Fourth

7  Amendment, police generally must obtain a warrant, supported by probable cause, before they

8  may search and seize evidence.  *Id.*  Specifically, the Fourth Amendment "requires the

9  government to establish by sworn evidence presented to a magistrate that probable cause exists

10  to believe that an offense has been committed and that items related to that offense . . . will be

11  found on the premises sought to be searched at the time the warrant is issued."  *United States v.*

12  *Rabe*, 848 F.2d 994, 997 (9th Cir. 1988); *see Illinois v. Gates*, 462 U.S. 213, 238 (1983).

13    Probable cause to search is determined by the totality of the circumstances.  *Gates*, 462

14  U.S. at 230-31.  The court considers whether there is "a substantial basis for concluding that the

15  affidavit in support of the warrant established probable cause."  *United States v. Greany*, 929

16  F.2d 523, 524 (9th Cir. 1991).  "[C]ommon rumor or report, suspicion, or even 'strong reason to

17  suspect,'" are not sufficient to establish probable cause.  *Henry v. United States*, 361 U.S. 98,

18  101 (1959).  Moreover, "a federal search warrant must be based upon a showing of probable

19  cause that a federal crime has been committed and that evidence of that crime is present on the

20  premises to be searched."  *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986).

21    The affidavit in support of the warrant here does not establish probable cause to believe

22  that Mr. Guzman-Baez committed the offenses alleged.  The affidavit and warrant are based on

23  allegations that Mr. Guzman-Baez harbored, employed and continued to employ illegal aliens.

24  Affidavit ¶¶ 5, 8, 31.  Each of these offenses requires that the defendant know (or, for the

25  harboring offense, at least recklessly disregard the fact) that the aliens are not lawfully in the

26  United States or authorized to work.  Affidavit ¶ 8 (citing 8 U.S.C. §§ 1324(a)(1)(A)(iii),

1   1324a(a)(1)(A), 1324a(a)(2)).  Although the affidavit includes allegations that employees of

2   Pepe's Cabinets were not legally in the United States and thus not legally authorized to work, *it*

3   *does not establish probable cause to believe that Mr. Guzman-Baez knew this,* which is required

4   for issuance of the search warrant, based on the three crimes specifically identified in the

5   affidavit in support of the search warrant.

6         According to the affidavit, the informant learned from discussions with other employees

7   at Pepe's Cabinets that they were illegally in the United States.  Affidavit ¶ 17.b.  The affidavit

8   does not allege that Mr. Guzman-Baez participated in or was present during any of those

9   conversations, which is a critical fact that would have been very easy to include in the affidavit if

10  it were true and available to the affiant.  Affidavit ¶ 17.b.  Nor does the affidavit claim that the

11  informant himself told Mr. Guzman-Baez that he was in the United States illegally, which again,

12  would have been an obvious and critical fact to include in the affidavit if it were true and

13  available to the affiant.

14        The only reference in the entire affidavit to Mr. Guzman-Baez's knowledge is the

15  conclusory statement that Mr. Guzman-Baez continued to employ Ms. Gamino-Perez with "full

16  knowledge that Ms. Gamino[-Perez] is an illegal alien."  Affidavit ¶ 20.  This conclusory

17  statement can have no legal weight unless it is supported by facts in the affidavit, which it is not.

18  Although the affidavit states that Mr. Guzman-Baez and his employee, Ms. Gamino-Perez, both

19  told a Coast Guard officer that "they were born in Mexico and did not have legal documents to

20  be present in the United States," Affidavit ¶ 19.d., the affidavit does not state that Mr. Guzman-

21  Baez was present during questioning of Ms. Gamino-Perez such that he could have heard and/or

22  understood any statements she may have made.

23        Because the affidavit in this case does not establish probable cause to believe that Mr.

24  Guzman-Baez committed the federal crimes identified in the affidavit, the warrant is invalid.  All

25  fruits of the unconstitutional searches and seizures pursuant to the warrant must be suppressed.

26  **B.    The Warrant Affidavit Included Material Misstatements and Omitted**

1

**Material Information, Without which it would not have Established Probable Cause**

2

3

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court recognized the

4

constitutional right to challenge the truthfulness of statements contained in a search warrant

5

affidavit. A district court must hold an evidentiary hearing under *Franks* upon a substantial

6

preliminary showing that (1) a false statement was included in the affidavit; (2) the false

7

statement was made knowingly and intentionally, or with reckless disregard for the truth; and (3)

8

the allegedly false statement was necessary to the finding of probable cause. *Id.* at 155-56; *see*

9

*also Belmontes v. Brown*, 414 F.3d 1094, 1122 (9th Cir. 2005) (noting that *Franks* hearing also

10

is required for reckless omissions). At this stage, clear proof of deliberate or reckless

11

misstatements or omissions is not required; rather, it is reserved for the evidentiary hearing.

12

*United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985); *United States v. Chesher*, 678 F.2d

13

1353, 1362 (9th Cir. 1982). At the evidentiary hearing, if the defendant ultimately establishes

14

the required elements by a preponderance of the evidence, the court must void the search and

15

suppress the fruits thereof. *Franks*, 438 U.S. at 156.

16

The affidavit here includes a number of false statements and omissions:

17

(1) The affidavit omits information that ICE had that the informant was not truthful.

18

According to the affidavit, the informant told the affiant that Mr. Guzman-Baez "hired [him] in

19

April 2006 to work at Pepe's as a carpenter." Affidavit ¶ 17.a. In November 2006, however,

20

ICE learned that the informant's rental application stated that he "has been employed as a

21

carpenter at Pepe's Cabinets for *three years*."[3] Exhibit C (emphasis added). The affidavit did

22

not disclose that the informant had made a material false statement about the length of his

23

employment, even though his employment is the sole subject of his cooperation with the

24

government. *See Gates*, 462 U.S. at 230 (noting that veracity and reliability of informant are

25

———————————

26

[3]The government has not provided a copy of the rental application in discovery, and Mr. Guzman-Baez does not know the date of the application.

GUZMAN-BAEZ MOTION TO SUPPRESS
No. CR-07-0794 DLJ, 07-0797 DLJ          8

1    highly relevant in determining the value of informant's information).

2    (2)  The affidavit does not disclose that Mr. Guzman-Baez did not prepare the EDD

3    reports that allegedly included fraudulent social-security numbers for Pepe's Cabinets

4    employees.  The affidavit states that the social-security numbers for Pepe's Cabinets employees

5    "that Guzman submitted" to the EDD for 2006 and the first half of 2007 were fraudulent.

6    Affidavit ¶ 14.  In fact, the EDD records were prepared and signed by "preparers" other than Mr.

7    Guzman-Baez.  Exhibit B.  The affidavit does not disclose that Mr. Guzman-Baez did not

8    prepare the EDD forms.

9    (3)  The affidavit materially misstates the informant's conversation with Mr. Guzman-

10    Baez about the potential hiring of an undocumented worker.  The affidavit states that when the

11    informant asked Mr. Guzman-Baez if he would hire a friend who had no papers, Mr. Guzman-

12    Baez "stated that he wanted to first determine the *work status* of another employee who was

13    recently hospitalized."  Affidavit ¶ 17.d (emphasis added).  In fact, according to the ICE report

14    of this conversation, Mr. Guzman-Baez told the informant only that "he wants to see what

15    happens with the old man."  Exhibit D.  The affidavit thus affirmatively and materially

16    misrepresents the conversation to make it seems as if Mr. Guzman-Baez made a statement about

17    an employee's legal work status, when in fact he did nothing of the sort.

18    (4)  The affidavit materially misrepresents what Mr. Guzman-Baez learned about Ms.

19    Gamino-Perez during the July 27, 2007, Coast Guard stop.  The affidavit suggests that because

20    she admitted to the Coast Guard police during the stop that she was not legally in the United

21    States, Mr. Guzman-Baez had "full knowledge that Ms. Gamino[-Perez] is an illegal alien."

22    Affidavit ¶ 20.  In fact, as the affiant knew or should have known, Mr. Guzman-Perez was

23    separated from Ms. Gamino-Perez during most of the stop and did not speak or understand

24    English.  Guzman-Baez Decl.  The stop thus could not have supported Mr. Guzman-Baez's

25    knowledge of Ms. Gamino-Perez's illegal status.

26    Particularly in light of the extremely weak nature of the probable cause statement in the

1  affidavit, without these material omissions and misrepresentation in the affidavit, it would not

2  have established probable cause for the search of Mr. Guzman-Baez's business.  Because the

3  affiant knew or at least should have known each of these facts before he prepared the affidavit,

4  he had at least a reckless disregard for the truth.  If the Court finds that the affidavit in support of

5  the search warrant does establish probable cause to search Mr. Guzman-Baez's business, it must

6  grant a *Franks* hearing.

7                                              **CONCLUSION**

8        For the reasons stated above, the affidavit in support of the search warrant does not

9  establish probable cause to search Mr. Guzman-Baez's business.  Alternatively, the affidavit

10  includes four material omissions and misstatements, without which it would not have established

11  probable cause.  The Court must suppress all fruits of the unlawful search of Mr. Guzman-Baez's

12  business or, at least, conduct a *Franks* hearing.

13  Dated:  March 7, 2008

14                                              Respectfully submitted,

15                                              BARRY J. PORTMAN
                                                Federal Public Defender
16
                                                    /S/
17
                                                SHAWN HALBERT
18                                              Assistant Federal Public Defender

19

20

21

22

23

24

25

26

GUZMAN-BAEZ MOTION TO SUPPRESS
No. CR-07-0794 DLJ, 07-0797 DLJ                    10