# Exhibit A

**<u>U.S. v. Jose De Jesus Guzman-Baez</u>**
**CR 07-00794 DLJ**

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, MICHAEL BARGE, being duly sworn, state as follows:

## I.     AGENT'S BACKGROUND AND EXPERIENCE

1.  I am a Special Agent with the United States Immigration and Customs Enforcement ("ICE") and have been so employed for over three years. I am currently assigned to the Worksite Enforcement Unit in San Francisco. As part of my duties, I investigate violations involving the knowing harboring and employment of illegal aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) [Harboring of Illegal Aliens] and 8 U.S.C. § 1324a [Employment of Illegal Aliens]. I have been assigned to or have assisted in numerous investigations relating to immigration matters throughout my career.

2.  Through training and experience, I am aware that all employers are responsible to ensure that each employee, U.S. citizen or not, is authorized for employment in the United States. Employers are required to complete and retain employment eligibility verification (I-9) forms for all employees hired after November 6, 1986. An employer is obligated to review documents that prove a newly hired employee's identity and eligibility to work. These documents may include a permanent resident card ("green card") or an employment authorization card and a social security card. Aliens legally present in the United States may apply for these documents.

3.  As a federal law enforcement officer, I am authorized to investigate violations of federal law and to execute search warrants issued under the authority of the United States.

## II.    PURPOSE OF THE SEARCH WARRANT

4.  This affidavit is made in support of a warrant to search the premises of Pepe's Cabinets ("Pepe's"), a carpentry business located at 1285 47th Avenue #A, Oakland, California, whose owner and employer is Jose De Jesus Guzman-Baez, a/k/a, Jose De Jesus Guzman, a/k/a Jose Guzman ("Guzman"). The premises to be searched is described more particularly in Attachment A, which is attached hereto and fully incorporated herein.

5.  There is probable cause to believe that the items to be seized as described in Attachment B, which is attached hereto and fully incorporated herein, will be located at the premises, described in Attachment A, and are evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324(a)(1)(A)(iii) [Harboring of Illegal Aliens] and 8 U.S.C. § 1324a (a)(1)(A) and § 1324a (a)(2) [Employment of Illegal Aliens].

6.  The information contained in this affidavit is known to me as a result of my personal participation in this investigation or was related to me by other law enforcement officers as well as a confidential informant who is employed at Pepe's Cabinets; physical surveillance; administrative subpoenas; website inquiries; and immigration and other records.

219

During the course of this investigation, I have consulted with ICE agents who have conducted numerous worksite investigations and have participated in hundreds of search and arrest warrants resulting in successful federal prosecutions. This affidavit is intended to show that there is probable cause for issuance of the search warrant and does not purport to set forth all of the evidence gathered to date in this investigation.

7. Based upon the following facts, my experience and training, and the experience and training of other ICE agents with whom I have consulted, there is probable cause to believe that Guzman has knowingly employed and harbored illegal aliens and that he has continually failed to report accurate information about his workforce to government agencies in order to conceal, harbor and shield his illegal alien employees from detection. There is also probable cause to believe that a search of Pepe's Cabinets will reveal that Guzman does not complete I-9 forms and that he has acted with the intent to facilitate the unlawful presence of illegal aliens.

## III.   APPLICABLE STATUTES

8. Unlawful Employment of Aliens

a. Harboring Illegal Aliens

8 U.S.C. § 1324(a)(1)(A)(iii) makes it a crime to conceal, harbor, or shield from detection, or to attempt to conceal, harbor, or shield from detection, an alien in any place, knowing or in reckless disregard of the fact that the alien has come to, entered, or remains in the United States in violation of law.

b. Employment of Illegal Aliens

(1) 8 U.S.C. § 1324a(a)(1)(A) makes it a crime for a person or other entity to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien. The term "unauthorized alien" means, with respect to the employment of an alien at a particular time, that the alien is not at that time either an alien lawfully admitted for permanent residence, or authorized to be so employed by chapter 12 of Title 8 of the United States Code, or by the Attorney General.

(2) 8 U.S.C. § 1324a(a)(2) makes it a crime for a person or other entity, after hiring an alien for employment in accordance with paragraph (1), to continue to employ the alien in the United States knowing the alien is, or has become, an unauthorized alien with respect to such employment.

220

## IV.    FACTS SUPPORTING PROBABLE CAUSE

9.  In July 2006, the ICE Special Agent in Charge of the San Francisco Field Office received information from the Department of Homeland Security's ICE tip-line that Guzman is employing approximately 20 illegal aliens at Pepe's Cabinets, 1285 47th Avenue #A, Oakland, California. The caller identified Guzman as an illegal alien who pays his undocumented workforce in cash.

10.  On November 15, 2006, ICE Special Agent Michael Ertz and this affiant entered the business at Pepe's in an undercover capacity as potential customers. Employees directed this affiant into the back office where I encountered an unidentified Hispanic woman working at a desktop computer. The woman introduced this affiant to the owner, whom I immediately recognized as Guzman based on a California Department of Motor Vehicles driver's license (B6731455) photograph. This affiant received a Pepe's business card bearing the name Jose Guzman. When this affiant asked the owner, "who is Jose Guzman?," Guzman responded, "That's me," and then explained that his nickname is "Pepe."

11.  On April 4, 2007, this affiant followed Guzman to his residence at 3933 Midvale Avenue, Oakland, California. A check with the United States Postal Service revealed that the following individuals received mail at 3933 Midvale Avenue, Oakland, California: Jose De Jaz Guzman Baez, Ma De Jesus Ramirez, Maria A. Ramirez (Guzman's wife), Leopoldo Perez-Cruz (Guzman's employee), and Octavio E. Jauregui (identified as Guzman's landlord).

12.  This affiant has obtained information from the City of Oakland Business Tax Office regarding required annual filings from Pepe's since its inception in November 1998 through 2005. Guzman has been the sole owner of Pepe's and has claimed no more than one full-time employee. Guzman provided the Business Tax Office with Social Security number 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.

13.  California employers must file quarterly reports ("DE 6") with the California Employment Development Department ("EDD") reporting the identities and tax withholding for all employees. This affiant has obtained a copy of EDD records for the first quarter of 2006 (beginning in January 2006) through the second quarter of 2007. As an example, Guzman reported Victor Castro, Guillermo Hernandez, Francisco Velasco as Pepe's employees in the first quarter of 2006. For the most recent quarter (second quarter of 2007), Guzman reported Maria G. Gamino, Leopoldo Perez, Maria D. Ramirez (Guzman's wife), Marvin Terezon, and Michael Velascopantoja as Pepe's employees.

14. Information obtained from the Social Security Administration ("SSA") reveals as follows:

a. Guzman and all seven employees reported to in the year 2006 used social security numbers that appear to be fraudulent because they do not match SSA records. Of eight social security numbers submitted to EDD (for Guzman and seven employees), five numbers do not match the person who used them and three are invalid (meaning an impossible number or one that has not yet been assigned). Social Security number, 672-90- 9824, used by Guzman is also invalid. The seven reported employees are Victor Castro, Guillermo Hernandez, Francisco Velasco, Ana Buenrostro, Leopoldo Cruz, Yeni Lopez, and Fernandez Gomez.

b. According to EDD, two additional employees, Marvin Terezon and Maria Guadalupe Gamino, were reported by Guzman as commencing employment at Pepe's in the first quarter of 2007. Social Security Administration checks reveal that the social security numbers that Guzman submitted to EDD for Terezon and Gamino are fraudulent. Based on EDD records for the second quarter of 2007, Guzman reported two additional employees, Maria D. Ramirez (Guzman's wife) and Michael Velascopantoja. Social Security Administration checks reveal the social security numbers that Guzman submitted to EDD for Ramirez and Velascopantoja are fraudulent.

15. On December 5, 2006, ICE Special Agent David Moss and this affiant interviewed and obtained a sworn statement from a cooperating witness, who is an illegal alien employed at Pepe's since April 2006. Earlier that morning, the cooperating witness had been arrested outside his apartment and admitted to agents that he is illegally present in the United States. The cooperating witness is a Mexican citizen who last entered the United States by crossing the border between the United States and Mexico without inspection by an immigration officer. This investigation reveals that, although the cooperating witness has been employed at Pepe's since April 2006, Guzman has not reported him as an employee to EDD.

16. The cooperating witness has no criminal history and no promises were made to him. The cooperating witness has been granted deferred action and short-term employment authorization for himself and his wife. Deferred action in this context means that for a temporary period of one year, with the possibility of extensions, ICE will not seek to remove the cooperating witness or his wife from the United States. Deferred action was granted based on the witness' cooperation with this investigation and the medical condition of a family member. As of this date, only the wife has received an employment authorization card.

17. During this investigation, the cooperating witness has continued to work at Pepe's and has provided information about Pepe's employees, including their names, countries of origin, and how they traveled to and from work. The cooperating witness informed this affiant as follows:

222

a. Guzman hired the cooperating witness in April 2006 to work at Pepe's as a carpenter for $10.00 per hour. This affiant asked the cooperating witness if he had filled out an employment eligibility verification (I-9) form to work at Pepe's and showed him a copy of the form. After reviewing the I-9 form, the cooperating witness responded, "No." The cooperating witness stated that his hiring process at Pepe's was "verbal" and he did not complete paperwork or provide identification to anyone at Pepe's. The cooperating witness further stated that, while working at Pepe's, he has never been provided with a W-2 form.

b. It is common for Pepe's employees to describe to each other how they arrived in the United States. Based on conversations with his co-workers, the cooperating witness knows that all eight Pepe's employees, including Froylan Flores who is currently on a leave of absence, are illegally present in the United States. All of the employees are from Mexico, except for Marcelino Llamas and Marvin Terezon, who are from Guatemala and El Salvador, respectively. In late 2006, Guzman hired Jaime Sandoval, who admitted to the cooperating witness that he is from Mexico and is illegally present in the United States. Even the two most recent employees whom Guzman reported to EDD in the second quarter of 2007, Maria D. Ramirez (Guzman's wife) and Michael Velascopantoja, discussed their status as illegal aliens. Ramirez told Pepe's employees how easy it was to cross the border from Mexico to the United States through Mexicali (a town situated close to the border). Ramirez stated that she jumped a fence and then crossed a sewer. During a conversation with Michael Velascopantoja ("Michelle"), Velascopantoja admitted to the cooperating witness that he is an illegal alien who crossed the border in the desert.

c. Pepe's has a timecard system to track hours worked and every other week Guzman calls each employee, individually, into his office to pay him or her. Guzman pays the cooperating witness $800.00 in cash every other week. The cooperating witness knows three workers who are paid by check: Fernando Gomez, Leopold Perez, and Francisco Velasco. Leopoldo Perez showed the cooperating witness a check after being paid by Guzman. Information from EDD for the third quarter of 2006 reveals that Pepe's had reported wages to Fernando Gomez, Francisco Velasco, and an individual named Leopoldo Perez Cruz. On June 12, 2007, the cooperating witness told this affiant that, for the last two months, Leopoldo Perez Cruz had been living at and renting a room inside Guzman's residence at 3933 Midvale Avenue in Oakland.

d. On March 22, 2007, the cooperating witness asked Guzman if he would hire a friend who had just arrived from Mexico and "doesn't have papers." "Papers" in street vernacular means immigration documents that establish evidence of authorized stay in the United States (e.g. permanent resident or green card). Guzman stated that he wanted to first determine the work status of another employee who·was recently hospitalized. Nothing further was discussed.

e. The cooperating witness stated that Guzman's cell number is (510) 206-4802. AT&T records confirm that cell phone number (510) 206-4802 is subscribed to Jose

Baez, who provided AT&T with California driver's license number B6731455 and Social Security number 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. The photograph from California driver's license number B6731455 is the same photograph that this affiant used to confirm Guzman's identity on November 15, 2006. Social security number 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 is the same fraudulent social security number that Guzman has provided to the City of Oakland Business Tax Office and the California EDD in connection with his business at Pepe's.

18. On July 27, 2007, this affiant received a phone call from the cooperating witness who stated that Guzman's wife, Maria Ramirez, came into Pepe's that morning. Ms. Ramirez told the employees that immigration officials had arrested Guzman and confiscated his blue Tahoe vehicle. The cooperating witness stated that Guzman arrived at Pepe's later that day.

19. On August 1, 2007, this affiant received an incident report from the U.S. Coast Guard ("USCG") Security Police at Coast Guard Island in Alameda, CA. The report reveals as follows:

a. On July 27, 2007, Guzman and Maria Guadalupe Gamino-Perez ("Gamino") attempted to enter Coast Guard Island in a blue Chevy Tahoe registered to Guzman. The blue Tahoe had expired registration tags. The cooperating witness, EDD records checks, and surveillance all confirm that Ms. Gamino is an employee of the Pepe's business.

b. USCG officers contacted the Alameda Police Department after determining that Guzman's California driver's license (B6731455) had been suspended.

c. Alameda Police Officer McManamin responded and gave Guzman a citation for driving with a suspended license. The blue Tahoe was impounded and Guzman was released to USCG officers.

d. After Guzman and Ms. Gamino provided Mexican Consular identification cards, USCG Officer Lualemaga completed immigration questionnaires. Guzman and Ms. Gamino admitted that they were born in Mexico and did not have legal documents to be present in the United States. USCG officers later released Guzman and Ms. Gamino with a warning.

20. With full knowledge that Ms. Gamino is an illegal alien, Guzman has continued to employ her.

21. Pepe's website lists its e-mail address as pepescabinets@sbcglobal. On September 12, 2007, this affiant received information from AT&T Internet Services (Yahoo and AT&T merged in November 2005) in response to a subpoena for subscriber or customer information on e-mail account pepescabinets@sbcglobal.net. According to AT&T, pepescabinets@sbcglobal.net is subscribed to Jose Guzman at his business address: Pepe's

Cabinets, 1285 47th Avenue, Oakland, California; account no. 2518768; phone: (510) 536-0731.

22. On October 4, 2007, from approximately 7:00 a.m. to 9:30 a.m., this affiant and other agents placed the Pepe's business under surveillance and took photographs of employees as they entered or exited the building. Additional photographs were taken on October 17, 2007.

23. On October 18, 2007, this affiant, together with ICE Special Agent David Moss and Investigative Assistant Teresa Alleyne, showed the cooperating witness individual photographs of Guzman and seven employees, including Maria Ramirez (Guzman's wife) and Maria Guadalupe Gamino-Perez, taken at Pepe's the day before. The cooperating witness identified each employee by name and confirmed that Guzman and all seven identified employees are illegal aliens.

## V.   ADDITIONAL TRAINING AND EXPERIENCE

24. Based on the foregoing facts, my experience and training, and the experience and training of other ICE agents with whom I have consulted, there is probable cause to believe that the following evidence, as described in Attachment B, will be found at the search location, as described in Attachment A, and is relevant to this application for a search warrant.

### A.  Records and Tangible Items

(1) Employee and personnel records and documents, more particularly described as employment applications, time cards, payroll records, payroll stubs, payroll checks, withholding records and statements, correspondence with payroll processing companies, workers compensation records and claims, identification checks, I-9 forms, work permits, job applications, federal and state required filings, employment agency referral slips, employment agency documents, personnel rosters, work schedules, dates of employment, and any other employee-related records, including financial agreements, promissory or other notes, and correspondence between employees and employers. Employee records, as described above, may be in any form, including computerized, electronic, or hard paper copies;

(2) Documents, correspondence and other items between Pepe's and/or its owner(s) and the U.S. Department of Homeland Security, Immigration and Customs Enforcement, Social Security Administration, Internal Revenue Service, and/or other federal, state or local agency, including the California Employment Development Department and the City of Oakland Business Tax Office, and all other documents, records, correspondence, and notes related to employment, immigration status, and financial and/or business activities;

(3) Documents, records, correspondence, and notes related to Pepe's employees and owners and their identification information, including names, dates of birth, social security numbers, addresses, and telephone numbers;

(4) 1998 through 2006 individual and business tax returns; correspondence to and/or from the Internal Revenue Service pertaining to income tax returns; work papers, correspondence, notes, and/or other documents related to the preparation of tax returns;

(5) Immigration and identification documents, more particularly described as passports, alien registration cards, visas, applications and petitions for visa, drivers licenses, consular identification cards, social security documents, credit cards, and any other cards, records, or documents pertaining to the identification and status of the employees and/or owner(s);

(6) Business records and agreements, promissory notes, expense account ledgers, transportation receipts, and any documents demonstrating an employment, business and/or financial relationship between Pepe's employees and the owner(s);

(7) Real estate records related to the purchase, sale, or transfer of the property, business and/or real assets of Pepe's. Such records should include title company records, loan records, documents filed with county records (i.e., Grant Deeds, Quit Claim Deeds, Deeds of Trust, etc.), and documents related to payments received or made for the property/business and/or real assets via wire or mail, cashier's checks. money orders, etc. Any other documents related to the ownership or leasing of the business and/or property;

(8) Utility bills, such as electric bills (PG & E), water bills, telephone bills; bank statements and credit card bills for the business and/or owners; payments, invoices, receipts, leasing and/or mortgage agreements and payments, and other documents related to the ownership and/or control of the business and/or property;

(9) Safes, storage lockers, safety deposit boxes, keys, combinations, receipts, and/or records for those items believed to be associated with the employment and/or harboring of illegal aliens. Based on my training and experience and that of other ICE agents, it is very common for individuals to maintain safes in their businesses to safeguard valuables and important documents, such as immigration documents, tax documents, and property, business and financial records.

B. Computers and Digital Storage Media

(10) Individuals, who are involved in the employment of illegal aliens, retain evidence of such activities on their computers or other forms of electronic storage media. Such evidence can be in the form of images stored individually or embedded in other documents in order to conceal the activities. Even where all evidence of such activity has been deleted, lost evidence can still be recovered from computers or other forms of electronic storage media.

226

(11) Computers and related electronic devices are common instruments utilized by individuals in many businesses and are often used as an alternative for hard copy document storage and handwritten correspondence. These computers are also used for writing correspondence, communicating with other computer users through the use of electronic messages (such as e-mail and websites), managing their assets, documenting and tracking financial transactions pertaining to their personal and business income and expenses, generating financial reports for the purpose of preparing their income tax returns, and monitoring their business or other legal/illegal activities.

(12) This affiant has consulted with ICE Special Agent Kendrick Yeung, a Computer Forensics Agent. Special Agent Yeung has received extensive training as a Computer Forensics Agent and in the execution of search warrants involving computers and related equipment, electronic data preservation, and the recovery, documentation and authentication of evidence.

(13) Based upon my training, experience, and information relayed to me by other Special Agents and others involved in the forensic examination of computers, specifically Special Agent Yeung, I know that computer data can be stored on a variety of systems and storage devices, including hard disk drives, floppy disks, compact disks, magnetic tapes, and memory chips. I further know that searches and seizures of evidence from computers commonly require agents to seize most or all computer items (hardware, software, and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment for the following reasons:

(a) Volume of Evidence. Computers and storage devices (like hard disks, diskettes, tapes, CD-ROMs, DVDs, Bernoulli drives, and zip drives) can store so many pages of information that it would be impractical to attempt this kind of data search on the site. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing fifteen gigabytes of data are now commonplace. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 7.5 million pages of data.

(b) Technical Requirements. Searching computer systems is a highly technical process requiring specific expertise and specialized equipment. The vast array of computer hardware and software available makes it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment to conduct a thorough search. It may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched.

(c) Files May be Hidden, Erased, Compressed, Password-Protected, Or Encrypted. Searching computer systems requires the use of precise, scientific procedures, which are designed to maintain the integrity of the evidence and to recover "hidden," erased,

compressed, encrypted, or password-protected data. When the user wants to conceal criminal evidence, he or she could store it in many places, in random order, and with deceptive file names and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form. In addition, through a process called "steganography," a computer user can conceal text in an image file, which cannot be viewed when the image file is opened. These processes require a substantial amount of time to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or instrumentalities of a crime.

(d) Danger of Destruction of Evidence. Because computer evidence is extremely vulnerable to tampering or destruction (either from external sources or from a destructive code imbedded in the system as a "booby trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

(1) In order to fully retrieve data from a computer system, the analyst needs to seize all or most of a computer's equipment including hardware, a system's peripheral devices, software, documentation, and passwords and data security devices so that a qualified computer expert can accurately retrieve the data in a laboratory or other controlled environment. This is true because the peripheral devices that allow a user to enter or retrieve data from storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular peripheral (or input/output) devices to read data on the system.

(2) Certain operating systems can be configured to operate only with a precise set of hardware, software, or peripherals. In these instances, it is important for the analyst to properly reconfigure the system as it normally operates in order to accurately retrieve evidence.

(3) In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) any application software that may have been used to create the data (whether stored on hard drives or external media), and other documentation and data security devices.

25. In executing the search warrants, the government will follow the Northern District of California's "Protocol for Searching Devices or Media that Store Data Electronically" as set forth in Attachment C, and incorporated herein by reference.

228

26. <u>Definitions Applying to Search and Seizure of Computers</u>

For purposes of the warrants, the foregoing terms are defined as follows:

(a) <u>Computer</u>: The term "computer" is defined under 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to operating in conjunction with such device."

(b) <u>Hardware</u>. Computer hardware consists of all equipment that can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) any data processing devices (such as central processing units, self-contained laptop and notebook computers, hand-held electronic organizers, personal digital assistants, and WebTV units), internal and external storage devices (magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices), and related communication devices such as modems, cables, connectors, programmable telephone dialing or signaling devices, and electronic tone-generating devices, and any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locations. The term "computer" is defined under 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to operating in conjunction with such device."

(c) <u>System Peripherals</u>. A piece of equipment that sends data to, or receives data from, a computer. Keyboards, mouses, printers, scanners, plotters, video display monitors, and certain types of facsimile machines are examples of peripherals.

(d) <u>Software</u>. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

(e) <u>Documentation</u>. Computer-related documentation consists of written recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

(f) <u>Passwords and Data Security Devices</u>. Computer passwords and other data security devices are designed to restrict access to or hide computer software,

11

229

documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or pass-phrase (string of alphanumeric characters) usually operates as a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, cards, and circuit boards. Data security software or digital code may include a programming code that creates "test" keys or "hot" keys, which perform certain preset security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

(g)    Storage Media.    Storage media includes any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information. Examples of storage media include diskettes, CD-ROMs, DVD's, magnetic tapes, ZIP disks, JAZZ disks, and EPROMS.

## VI.    BACKGROUND REGARDING THE INTERNET AND E-MAIL

27. Based on my knowledge, training, and experience, and the experience of other law enforcement officers, I have knowledge of the Internet and how it operates. I know that the Internet is a worldwide computer network which connects computers and allows communications and transfer of information and data across state and national boundaries. Individuals who utilize the Internet can communicate by using electronic mail. To access the Internet, the individual computer user must subscribe to an Internet Service Provider ("ISP"), which operates a host computer system with direct access to the Internet.

28. With a computer connected to the Internet through an ISP, the individual computer user can make electronic contact with computers around the world. This connection can be made by any number of means, including modem, local area network, and wireless methods.

29. The following paragraphs describe some of the functions and features of the Internet as it relates to the subject of this search warrant.

a.    Internet Service Providers ("ISPs"):    Individuals who have an Internet account and an Internet based E-mail address must have a subscription, membership, or affiliation with an organization or commercial service which provides access to the Internet. A provider of Internet access and services is referred to as an Internet Service Provider or "ISP."

b.    Electronic Mail ("E-Mail"):    E-mail is an electronic form of communication which usually contains written correspondence. It is similar to conventional paper mail in that it is addressed from one individual to another. An E-mail usually contains a message "header" which generally displays the sender's E-mail address, the recipient's E-mail address, and the date and time of the E-mail transmission. If a sender chooses to do so, he or she can type a subject line into the header. E-mail

message "headers" usually contain information, such as identification of the sender's ISP, which enables law enforcement officers to trace the message back to the original sender.

c.  Internet Addresses: Every device on the Internet has an address that allows other devices to locate and communicate with it. An Internet Protocol (IP) address is a unique number that identifies a device on the Internet. Other addresses include Uniform Resource Locator (URL) addresses, such as "http://www.usdoj.gov," which are typically used to access web sites or other services on remote devices. Domain names of Web sites, host names, and machine addresses are other types of addresses associated with Internet use.  Domain names registrars contain registration information concerning the identity of the owner of a domain name.

30.  Yahoo, Inc. ("Yahoo"): Based on my training and experience, I have learned the following about Yahoo:

a.  Yahoo is an Internet Service Provider that provides, among other services, e-mail accounts and Internet access to its subscribers;

b.  Yahoo has an E-mail service which is available free of charge to Internet users.  Subscribers obtain an account by registering on the Internet with Yahoo.  Yahoo requests subscribers to provide basic information, such as name, gender, zip code and other personal/biographical information. However, Yahoo does not verify the information provided;

c.  A Yahoo subscriber can store files, including E-mails and image files, on servers maintained and/or owned by Yahoo;

d.  Yahoo maintains electronic records pertaining to the individuals and companies for which it maintains subscriber accounts. These records include account access information, e-mail transaction information, account application information, and other information in computer data format, which records the activities and interactions of these accounts;

e.  Subscribers to Yahoo may access their accounts on servers maintained and/or owned by Yahoo from any computer connected to the Internet located anywhere in the world;

f.  Any e-mail that is sent to a Yahoo subscriber is stored in the subscriber's "mail box" on Yahoo servers until the subscriber connects to Yahoo and retrieves his/her messages.  After the subscriber retrieves a particular message, that message can remain on the Yahoo system indefinitely, unless the subscriber specifically deletes the message from the system;

g. When the subscriber sends e-mail, it is initiated at the user's computer, transferred to Yahoo servers and then transmitted to its end destination; and

231

h. A Yahoo subscriber can store e-mails and attached files in his or her own "mail box" or on servers maintained and/or owned by Yahoo.

## VII.   CONCLUSION

31.  Based upon the foregoing facts, my experience and training, and consultation with other experienced ICE agents, there is probable cause to believe that the items to be seized, described in Attachment B, will be found at Pepe's Cabinets, located at 1285 47th Avenue #A, Oakland, California, described in Attachment A, and are evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1324(a)(1)(A)(iii) [Harboring of Illegal Aliens] and 8 U.S.C. § 1324a (a)(1)(A) and § 1324a (a)(2) [Employment of Illegal Aliens].

32.  Because this investigation is continuing, disclosure of the search warrant, affidavit, application and the attachments thereto will jeopardize the ongoing investigation. Accordingly, I respectfully request that the search warrant, affidavit, application and all attachments be sealed until further order of this Court.

I declare under penalty of perjury that the above statements are true and accurate to the best of my knowledge and belief.

_____
MICHAEL BARGE
Special Agent
U.S. Immigration and Customs Enforcement


Subscribed and sworn before me on this 24th day of October 2007 at San Francisco, CA.

_____
HONORABLE EDWARD M. CHEN
United States Magistrate Judge

232

# Exhibit B

**U.S. v. Jose De Jesus Guzman-Baez**
**CR 07-00794 DLJ**



EDD    STATE OF CALIFORNIA
DE 6                              EDD

PAGE   1   OF 1                                    00060198

QTR ENDED 06 30 07        DUE  07 02 07      DELINQUENT  07 31 07              07 2

**EDD**                  This is to certify that this is a          455-1222-5
Serving the People       full, true and correct copy of the
Of California            data entered onto the Employment
                         Development Department tax system.
JOSE DE JESUS GUZMAN
PEPE'S CABINETS
1285 47TH AVE. #B        Employment Tax Branch
OAKLAND, CA  94601
                         by  *Dayle Miskell*            4          5

VOLUNTARY PLAN DI                              No Payroll      Final Return

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      MARVIN              TEREZON

                 3840.00             3840.00                    26.16

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      MICHAEL             VELASCO PANTOJA

                 1280.00             1280.00                    0.00

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      MARIA DE JESUS      RAMIREZ

                 2240.00             2240.00                    0.00

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      LEOPOLDO            PEREZ

                 3840.00             3840.00                    6.54

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      MARIA GUADALUPE     GAMINO

                 3553.25             3553.25                    0.00


                 14753.25            14753.25                   32.70

                 14753.25            14753.25                   32.70

declare that the information herein is correct to the best of my knowledge and belief.

                                                                        122

SIGNATURE  *Ren lun k*                TITLE BOOKS & TAXES PREPARER
           07/31/2007
           DEFAULT    NTF 2501078A    PHONE  (510) 781-0300




EDD    STATE OF CALIFORNIA
DE 9
EDD



PAGE  1  OF 1

00060198

OTR ENDED 03 31 07    DUE 04 02 07    DELINQUENT  04 30 07    07 1

455-1222-5

**EDD**
Serving the People
Of California

This is to certify that this is a
full, true and correct copy of the
data entered onto the Employment
Development Department tax system.

JOSE DE JESUS GUZMAN
PEPE'S CABINETS
1285 47TH AVE. #B
OAKLAND, CA  94601

Employment Tax Branch

by *Gayle Meskell*

| VOLUNTARY PLAN DI | | No Payroll | Final Return |
|---|---|---|---|
| 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 | MARVIN | TEREZON | |
| | 3840.00 | 3840.00 | 26.16 |
| 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 | MARIA | G PINEDA | |
| | 3217.50 | 3217.50 | 3.11 |
| 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 | LEOPOLDO | PEREZ | |
| | 4480.00 | 4480.00 | 7.63 |
| 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 | MARIA GUADALUPE | GAMINO | |
| | 3468.75 | 3468.75 | 0.00 |
| 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 | AURELIO | ECHEVERRIA | |
| | 2240.00 | 2240.00 | 0.00 |
| 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 | FRANCISCO | VELASCO | |
| | 472.00 | 472.00 | 0.00 |
| | 17718.25 | 17718.25 | 36.90 |
| | 17718.25 | 17718.25 | 36.90 |

I declare that the information herein is correct to the best of my knowledge and belief.

123

SIGNATURE  *Franz Lee K*
DATE  04/30/2007
A. GONZALEZ    NTF 2581070A
Grantland Wisine    Forms Software Only

TITLE BOOKS & TAXES PREPARER
PHONE  (510) 781-0300

0507071393030043



**EDD** Employment Development Department
State of California

## QUARTERLY WAGE AND WITHHOLDING REPORT

PLEASE TYPE THIS FORM PER INSTRUCTIONS ON REVERSE
You must FILE this report even if you had no payroll. If you had no payroll, complete items C or D and P.



00060198

Page number **1** of **1**

| QUARTER ENDED | 12/31/2006 | DUE | 01/01/2006 | DELINQUENT IF NOT POSTMARKED OR RECEIVED BY | 01/31/2006 | 06 | QTR 4 |

**EDD**
Serving the People Of California

Jose De Jesus Guzman
Pepe's Cabinets
1285 - 47th Avenue #A
Oakland, CA  94601

This is to certify that this is a full, true and correct copy of the data entered onto the Employment Development Department tax system.

Employment Tax Branch

by *Gayle Meskell*

EMPLOYER ACCOUNT NO.  45512225

DO NOT ALTER THIS AREA

A. EMPLOYEES full-time and part-time who worked during or received pay subject to UI for the payroll period which includes the 12th of the month.

| | 1st Mo. | 2nd Mo. | 3rd Mo. |
| --- | --- | --- | --- |
| | 3 | 3 | 2 |

B. ☐ Check this box if you are reporting ONLY Voluntary Plan DI wages on this page. Report PIT Wages and PIT Withheld, if appropriate. (See instructions for Item B.)   C. ☐ NO PAYROLL   D. ☐ OUT OF BUSINESS/FINAL REPORT

| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) | (LAST NAME) | Date | | H. PIT WAGES | | I. PIT WITHHELD |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 696469416 | Francisco | | Velasco | | | | | |
| G. TOTAL SUBJECT WAGES | 3164.00 | | | | | 3164.00 | | 0.00 |
| 633093740 | Leopoldo | P | Cruz | | | | | |
| G. TOTAL SUBJECT WAGES | 3304.00 | | | | | 3304.00 | | 36.50 |
| 549691452 | Yeni | P | Lopez | | | | | |
| G. TOTAL SUBJECT WAGES | 2142.00 | | | | | 2142.00 | | 0.00 |
| | | | | | | | | |
| G. TOTAL SUBJECT WAGES | | | | | | | | |
| | | | | | | | | |
| G. TOTAL SUBJECT WAGES | | | | | | | | |
| | | | | | | | | |
| G. TOTAL SUBJECT WAGES | | | | | | | | |
| | | | | | | | | |
| G. TOTAL SUBJECT WAGES | | | | | | | | |

| J. TOTAL SUBJECT WAGES THIS PAGE | K. TOTAL PIT WAGES THIS PAGE | L. TOTAL PIT WITHHELD THIS PAGE |
| --- | --- | --- |
| 8610.00 | 8610.00 | 36.50 |

| M. GRAND TOTAL SUBJECT WAGES | N. GRAND TOTAL PIT WAGES | O. GRAND TOTAL PIT WITHHELD |
| --- | --- | --- |
| | | |

P. I declare that the information herein is true and correct to the best of my knowledge and belief.

Preparer's Signature *Martha S. Gonzalez*  Title ☐ Preparer (Owner, Accountant, Preparer, etc.)

Phone (510) 508-9195   Date 01/15/2007

DE 6 Rev. 4 (2-04) (INTERNET) MAIL TO: State of California / Employment Development Department / P.O. Box 826288 / Sacramento, CA 94230-6288

Page 1 of 2

124

0122072325010014

 **Employment Development Department**
State of California

## QUARTERLY WAGE AND WITHHOLDING REPORT
PLEASE TYPE THIS FORM PER INSTRUCTIONS ON REVERSE
You must FILE this report even if you had no payroll. If you had no payroll, complete Items C or D and P.



00060198

| Page number 1 of 1 | | YR 06 | QTR 3 |
|---|---|---|---|

QUARTER ENDED **09/30/2006**   DUE **10/01/2006**   DELINQUENT IF NOT POSTMARKED OR RECEIVED BY **10/31/2006**

EMPLOYER ACCOUNT NO. **45512225**

Jose De Jesus Guzman
Pepe's Cabinets
1285 - 47th Avenue
Oakland, CA 94601

EDD
Serving the People of California

This is to certify that this is a full, true and correct copy of the data entered onto the Employment Development Department tax system.

Employment Tax Branch
by _Gayle Meskell_

DO NOT ALTER THIS AREA

| P | T | S | W | A |
|---|---|---|---|---|
| Mo. | Day | Yr. | | WIC |

A. EMPLOYEES full-time and part-time who worked during or received pay subject to UI for the payroll period which includes the 12th of the month.

| 1st Mo. | 2nd Mo. | 3rd Mo. |
|---|---|---|
| 5 | 4 | 3 |

B. ☐ Check this box if you are reporting ONLY Voluntary Plan DI wages on this page. Report PIT Wages and PIT Withheld, if appropriate. (See Instructions for item B.)   C. ☐ NO PAYROLL   D. ☐ OUT OF BUSINESS/FINAL REPORT

| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | | Date |
|---|---|---|---|---|
| 613304315 | Ana | E Buenrostro | | |
| G. TOTAL SUBJECT WAGES 1335.00 | H. PIT WAGES 1335.00 | | I. PIT WITHHELD 0.00 | |
| 990749324 | Fernando | J Gomez | | |
| 1350.00 | 1350.00 | | 0.00 | |
| 696469416 | Francisco | Velasco | | |
| 3766.00 | 3766.00 | | 0.00 | |
| 633093740 | Leopoldo | P Cruz | | |
| 3752.00 | 3752.00 | | 40.53 | |
| 621784492 | Victor | H Castro | | |
| 1344.00 | 1344.00 | | 0.00 | |
| 549691452 | Yeni | P Lopez | | |
| 4722.00 | 4722.00 | | 0.00 | |

| J. TOTAL SUBJECT WAGES THIS PAGE 16269.00 | K. TOTAL PIT WAGES THIS PAGE 16269.00 | | L. TOTAL PIT WITHHELD THIS PAGE 40.53 |
|---|---|---|---|
| M. GRAND TOTAL SUBJECT WAGES 16269.00 | N. GRAND TOTAL PIT WAGES 16269.00 | | O. GRAND TOTAL PIT WITHHELD 40.53 |

P. I declare that the information herein is true and correct to the best of my knowledge and belief.

Preparer's Signature _Martha A Gonzales_ ☐ Preparer (Owner, Accountant, Preparer, etc.)   Phone (510) 508-9195   Date 10/31/2006

DE 6 Rev. 4 (2-04) (INTERNET) MAIL TO: State of California / Employment Development Department / P.O. Box 826288 / Sacramento, CA 94230-6288

1120062829010050



**EDD** Employment Development Department
State of California

## QUARTERLY WAGE AND WITHHOLDING REPORT
PLEASE TYPE THIS FORM PER INSTRUCTIONS ON REVERSE
You must FILE this report even if you had no payroll. If you had no payroll, complete Items C or D and P.

Page number 1 of 1

00060198

QUARTER ENDED 06/30/2006    DUE 07/01/2006    DELINQUENT IF NOT POSTMARKED OR RECEIVED BY 07/31/2006    YR 06    QTR 2



Jose De Jesus Guzman
Pepe's Cabinets
1285-47th Avenue #A
Oakland, CA 94601

*Serving the People of California*

EMPLOYER ACCOUNT NO.
45512225

This is to certify that this is a full, true and correct copy of the data entered into the Employment Development Department taxpayer system.

Employment Tax Branch
by *Gayle Meskell*

DO NOT ALTER THIS AREA

| | N | C | T | S | W | A |
|---|---|---|---|---|---|---|

SEE REVERSE Day  Yr.   WID

A. EMPLOYEES: full-time and part-time who worked during or received pay subject to UI for the payroll period which includes the 12th of the month.

1st Mo. 3    2nd Mo. 3    3rd Mo. 5

B. ☐ Check this box if you are reporting ONLY Voluntary Plan DI wages on this page. Report PIT Wages and PIT Withheld, if appropriate. (See instructions for Item B.)    C. NO PAYROLL    D. OUT OF BUSINESS/FINAL REPORT

| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | |
|---|---|---|---|
| 696469416 | Francisco | Velasco | |
| G. TOTAL SUBJECT WAGES | H. PIT WAGES | | I. PIT WITHHELD |
| 3311.00 | 3311.00 | | 0.00 |
| 633093740 | Leopoldo | P Cruz | |
| 3360.00 | 3360.00 | | 37.62 |
| 621784492 | Victor | H Castro | |
| 2800.00 | 2800.00 | | 0.00 |
| 613304315 | Ana | E Buenrostro | |
| 1005.00 | 1005.00 | | 0.00 |
| 549691452 | Yeni | P Lopez | |
| 208.25 | 208.25 | | 0.00 |
| | | | |
| | | | |
| | | | |
| J. TOTAL SUBJECT WAGES THIS PAGE | K. TOTAL PIT WAGES THIS PAGE | | L. TOTAL PIT WITHHELD THIS PAGE |
| 10684.25 | 10684.25 | | 37.62 |
| M. GRAND TOTAL SUBJECT WAGES | N. GRAND TOTAL PIT WAGES | | O. GRAND TOTAL PIT WITHHELD |
| 10684.25 | 10684.25 | | 37.62 |

P. I declare that the information herein is true and correct to the best of my knowledge and belief.

Preparer's Signature *Martha R. Gonzalez*    Title Preparer (Owner, Accountant, Preparer, etc.)    Phone (510) 508-9195    Date 07/28/2006

DE 9 Rev. 4 (2-04) (INTERNET) MAIL TO: State of California / Employment Development Department / P.O. Box 826288 / Sacramento, CA 94230-6288

Page 1 of 2

CU

126

0807062505030027



 **EDD** Employment Development Department State of California

## QUARTERLY WAGE AND WITHHOLDING REPORT

PLEASE TYPE THIS FORM PER INSTRUCTIONS ON REVERSE
You must FILE the report even if you had no payroll. If you had no payroll, complete items C or D and P.

Page number  1 of 1



00060198

| QUARTER ENDED | 03/31/2006 | DUE | 04/01/2006 | DELINQUENT IF NOT POSTMARKED OR RECEIVED BY | | 06 | 1 |

EMPLOYER ACCOUNT NO.
45512225

Jose De Jesus Guzman
Pepe's Cabinets
1285 - 47th Avenue #A
Oakland, CA  94601

**EDD**
Serving the People
Of California

This is to certify that this is a full, true and correct copy of the data entered onto the Employment Development Department tax system.

DO NOT ALTER THIS AREA

Employment Tax Branch
by *Gayle Meskull*

| | 1st Mo. | 2nd Mo. | 3rd Mo. |
|---|---|---|---|
| | 3 | 2 | 2 |

Check this box if you are reporting ONLY Voluntary Plan DI wages on this page.
Report PIT Wages and PIT Withheld, if appropriate. (See Instructions for item B.)

| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | Date |
|---|---|---|---|
| 602071836 | Guillermo | Hernandez | |
| G. TOTAL SUBJECT WAGES | H. PIT WAGES | | I. PIT WITHHELD |
| 1960.00 | | 1960.00 | 0.00 |
| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | |
| 696469416 | Francisco | Velasco | |
| G. TOTAL SUBJECT WAGES | H. PIT WAGES | | I. PIT WITHHELD |
| 3920.00 | | 3920.00 | |
| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | |
| 621784492 | Victor | H. Castro | |
| G. TOTAL SUBJECT WAGES | H. PIT WAGES | | I. PIT WITHHELD |
| 2800.00 | | 2800.00 | 0.00 |
| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | |
| | | | |
| G. TOTAL SUBJECT WAGES | H. PIT WAGES | | I. PIT WITHHELD |
| | | | |
| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | |
| | | | |
| G. TOTAL SUBJECT WAGES | H. PIT WAGES | | I. PIT WITHHELD |
| | | | |
| E. SOCIAL SECURITY NUMBER | F. EMPLOYEE NAME (FIRST NAME) | (M.I.) (LAST NAME) | |
| | | | |
| G. TOTAL SUBJECT WAGES | H. PIT WAGES | | I. PIT WITHHELD |
| | | | |

| J. TOTAL SUBJECT WAGES THIS PAGE | K. TOTAL PIT WAGES THIS PAGE | L. TOTAL PIT WITHHELD THIS PAGE |
|---|---|---|
| 8680.00 | 8680.00 | 0.00 |
| M. GRAND TOTAL SUBJECT WAGES | N. GRAND TOTAL PIT WAGES | O. GRAND TOTAL PIT WITHHELD |
| 8680.00 | 8680.00 | 0.00 |

P. I declare that the information herein is true and correct to the best of my knowledge and belief.

| Preparer's Signature | *Martha S Gonzalez* | Title Preparer | Phone 510. 508-9195 | Date 4-25-06 |
|---|---|---|---|---|
| | | (Owner, Accountant, Preparer, etc.) | | |

DE 6 Rev. 4 (2-04) (INTERNET) MAIL TO: State of California / Employment Development Department / P.O. Box 826288 / Sacramento, CA 94230-6288

Page 1 of 2

X Jose de Jesus Guzman

CU

0519062961020009

# Exhibit C

**U.S. v. Jose De Jesus Guzman-Baez**
**CR 07-00794 DLJ**

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE    2 |
|---|---|
| R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | CASE NUMBER ▓▓▓▓▓▓ |
| | REPORT NUMBER: 006 |

DETAILS OF INVESTIGATION:

In July 2006, the SAC/SF received information from the DHS ICE tip-line that Jose De Jesus GUZMAN-Beaz is employing approximately 20 illegal aliens at PEPE'S in Oakland, CA. The caller identified GUZMAN as an illegal alien who pays his undocumented workforce in cash.

On November 21, 2006, at approximately 3:45 pm, ICE Special Agent (SA) Michael Barge set up surveillance at PEPE'S, 1285 47th Avenue, Oakland, CA.  During the surveillance SA Barge observed the following activity (times are approximate):

6:28 pm - A Hispanic man, later identified as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ emerges from within PEPE'S carrying a cardboard box. ▓▓▓▓ walks to and places the box in the back of a ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓

6:32 pm - ▓▓▓▓▓▓▓ departs in the ▓▓▓▓▓▓▓▓ heading west on 47th Avenue.

6:45 pm - The ▓▓▓▓▓▓▓▓ parks in front of the ▓▓▓▓▓▓▓ located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ exits the ▓▓▓ and begins unloading small pieces of wood from the ▓▓ into a black garbage bag when ▓▓▓▓▓▓▓▓ later follows the ▓▓▓▓▓ into the ▓▓▓▓▓▓▓▓▓ through a security gate.

7:00 pm - ▓▓▓▓▓▓▓ returns to the ▓▓▓▓▓▓▓, drives into the ▓▓▓▓▓▓▓▓ parking lot, and parks in carport space number ▓▓▓

7:10 pm - ▓▓▓▓▓▓ walks into apartment number ▓▓ in ▓▓▓▓▓▓▓▓▓

7:15 pm - Surveillance ended.

On November 22, 2006, SA Barge received information from the ▓▓▓▓▓ ▓▓▓▓▓▓ that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ at ▓▓▓▓▓▓▓▓▓▓ are renting apartment number ▓▓ at ▓▓▓▓▓▓▓▓▓▓ Leasing Agent ▓▓▓▓▓▓▓ provided copies of a rental agreement, an application to rent, and identification documents (e.g. Mexico Consular ID card) for apartment ▓▓▓▓▓▓▓▓▓▓ Mexico ID card indicates he was born on ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓

The rental application notes that ▓▓▓▓▓▓▓▓ has been employed as a carpenter at Pepe's Cabinets for three years and his supervisor is named Jose.

O F F I C I A L   U S E   O N L Y          28

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.