JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

DEBORAH R. DOUGLAS (NYBN 2099372)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    Facsimile: (510) 637-3724
    E-Mail: deborah.r.douglas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. CR07-00797 DLJ; CR07-00794 DLJ |
| Plaintiff, | |
| v. | GOVERNMENT'S OMNIBUS SURREPLY OPPOSING DEFENDANT'S MOTIONS TO (1) SUPPRESS EVIDENCE OR, ALTERNATIVELY, FOR A FRANKS HEARING, AND (2) FOR A BILL OF PARTICULARS |
| JOSE De JESUS GUZMAN-BAEZ, | |
| Defendant. | |

## I.  INTRODUCTION

    Defendant has challenged the search warrant based upon the sole argument that the affidavit does not support probable cause that defendant knew that his employees were illegal aliens.  The magistrate judge correctly found probable cause and approved the search warrant.  In the alternative, defendant improperly seeks a *Franks* hearing without satisfying his threshold burden for such a hearing.

    In addition, defendant has ignored the principles of law governing a bill of particulars in arguing that the government should be compelled to prepare a bill of particulars to explain its theory of harboring with respect to each of the eight harboring charges.  It is not the government's job to

1    marshal all of the evidence in defendant's possession, and apply the facts to the law, on behalf of
2    the defendant.    That is the defense lawyers's job.
3            On March 28, 2008, the government filed its opposition to defendant's motions.    On April
4    11, 2008, defendant filed a reply that makes new arguments to which the government has responded
5    in this surreply.    None of defendant's arguments have merit.

6    **II.  THE SEARCH WARRANT WAS SUPPORTED BY PROBABLE CAUSE**

7            In his reply, defendant contends that "the affidavit does not say that the informant ever told
8    Mr. Guzman-Baez that he was illegally in the United States or that Mr. Guzman-Baez was present
9    when other employees discussed their illegal status" (Defendant's Reply, p. 3).    Contrary to
10   defendant's belief, the affidavit does not have to present "direct evidence" in the form of his
11   admissions to establish probable cause that defendant knew that his employees were illegal aliens
12   (Defendant's Reply, pp. 2-4).    It is obviously impossible to prove directly the operation of a
13   person's mind.  As set forth in the government's opposition, the totality of the evidence, including
14   reasonable inferences, established probable cause that defendant, an illegal alien and the sole owner
15   of Pepe's Cabinets, knew that his employees were illegal aliens, including his own wife Maria
16   Ramirez (Government's Opposition, pp. 3-5).

17           Rule 5.6 of the Ninth Circuit Manual of Model Jury Instructions defines "knowingly" as
18   follows: "An act is done knowingly if the defendant is aware of the act and does not act through
19   ignorance, mistake or accident.  The government is not required to prove that the defendant knew
20   his acts or omissions were unlawful.  You may consider evidence of the defendant's words, acts,
21   or omissions, *along with all the other evidence*, in deciding whether the defendant acted knowingly"
22   (emphasis added).

23           Defendant's remaining arguments are equally frivolous.  Under circumstances where 100%
24   of defendant's employees were illegal aliens and 100% of the social security numbers submitted
25   to the California Employment Developmental Department ("EDD") for every quarterly report
26   submitted in the year 2006 and the first two quarters of 2007 were fraudulent, defendant argues that
27   the "most obvious inference" is that each of the named eleven employees "provided the preparer
28   of the EDD forms with false social security numbers in order to obtain and/or keep their jobs"

1    (Defendant's Reply, p. 3). As the government previously pointed out, "[a]ll six reports were
2    prepared and signed on behalf of "Jose De Jesus Guzman, Pepe's Cabinets" by a professional
3    preparer. The first quarterly report for 2006 was also signed by the defendant. In determining
4    probable cause, it makes no difference whether the defendant personally prepared the EDD reports,
5    or hired a professional to prepare the reports on his behalf. It is reasonable to conclude that all of
6    the reports were prepared based upon information provided by defendant, the sole owner of Pepe's
7    Cabinets, or at his instruction" (Government's Opposition, p. 5).

8         Further, defendant seeks to refute evidence contained in the affidavit that the environment
9    at Pepe's Cabinets invited the employees, including defendant's wife Maria Ramirez, to openly
10   discuss their status as illegal aliens and how they entered the United States without inspection by
11   immigration officials (Affidavit ¶ 17b). Without any support, defendant boldly asserts that
12   "employees did not discuss their legal status" (Defendant's Reply, p. 4). In the alternative,
13   defendant argues that the "reports indicate that these conversations did not occur naturally but
14   instead were prompted by the informant" (Defendant's Reply, p. 5). First, defendant has
15   improperly asserted facts outside of the four corners of the affidavit. Second, the reports do not
16   support defendant's argument, but, rather, corroborate statements contained in the affidavit.
17   Defendant cites to two investigatory reports: the first documenting ICE's initial interview with an
18   employee of Pepe's Cabinets on December 7, 2006 and the second documenting an interview with
19   the same employee six months later on June 12, 2007. During the June 12th interview, the
20   cooperating employee "said everyone employed at Pepe's has admitted to being an illegal alien"
21   (Defendant's Reply [Exhibit J ]). The cooperating employee added that his co-workers' status as
22   illegal aliens "came up in conversation or he asked them directly, how did you come here?"
23   (Defendant's Reply [Exhibit J ]). The fact that the cooperating employee may have sometimes
24   directly asked the question during those conversations does not support defendant's contention that
25   "these conversations did not occur naturally" (Defendant's Reply, p. 5).

26        Moreover, the precise manner in which defendant's wife illegally entered the United States
27   – whether by jumping a fence and crossing a sewer (as she told her co-workers), or "by walking
28

1  through the hills" (as she told federal agents), or whether she did both – is irrelevant to the issue of

2  probable cause (Defendant's Reply, p. 5 [footnote 3]).

3       Defendant describes the cooperating witness as an "untested informant who is receiving a

4  substantial benefit from the government" (Defendant's Reply, p. 7).    This cooperating witness is

5  not the typical informant.  He has no criminal history and his primary role in the investigation was

6  to identify co-workers who were also illegally present in the United States.    The cooperating

7  witness was not an outsider; he was an employee at Pepe's since April 2006.  In the search warrant

8  affidavit, the government disclosed as follows:

9           The cooperating witness has no criminal history and no promises were
            made to him. The cooperating witness has been granted deferred
10          action and short-term employment authorization for himself and his
            wife.  Deferred action in this context means that for a temporary
11          period of one year, with the possibility of extensions, ICE will not
            seek to remove the cooperating witness or his wife from the United
12          States. Deferred action was granted based on the witness' cooperation
            with this investigation and the medical condition of a family member.
13          As of this date, only the wife has received an employment
            authorization card (¶ 16).

14
       Defendant argues that "[t]he fact that the informant did not fill out papers when he started
15
   working at the cabinet shop, including an I-9 form, does not justify the conclusion that Mr.
16
   Guzman-Baez knew that the informant was not legally authorized to work" (Defendant's Reply, p.
17
   5).    The cooperating employee revealed that the hiring process at Pepe's Cabinet's was "verbal"
18
   and that he did not complete paperwork, including an I-9, or provide identification to anyone at
19
   Pepe's (Affidavit ¶ 17a).    In addition, while working at Pepe's, the cooperating employee was
20
   never been provided with a W-2 form (Affidavit ¶ 17a). As also set forth in the affidavit, "all
21
   employers are responsible to ensure that each employee, U.S. citizen or not, is authorized for
22
   employment in the United States.  Employers are required to complete and retain employment
23
   eligibility verification (I-9) forms for all employees hired after November 6, 1986. An employer is
24
   obligated to review documents that prove a newly hired employee's identity and eligibility to work.
25
   These documents may include a permanent resident card ("green card") or an employment
26
   authorization card and a social security card. Aliens legally present in the United States may apply
27

28

1   for these documents" (Affidavit ¶ 2).    All of these factors are relevant to probable cause that
2   defendant knew that his employees were illegal aliens.

3       Defendant further argues that "[s]mall employers across the country pay employees and
4   countless housecleaners and nannies and the like in cash "under the table," as the informant was
5   paid, and while that may violate other rules and laws about paying taxes," salaries paid in cash
6   "under the table" should not be considered as a factor in determining "knowledge of employees'
7   illegal work status" (Defendant's Reply, pp. 5-6).    The fact that defendant paid the cooperating
8   employee's salary in cash every other week and never provided him with a W-2 form are relevant
9   factors that the magistrate judge considered in finding probable cause.

10       Defendant also argues that the magistrate judge should have given "zero weight" to the
11   cooperating employee's statement, as contained in the affidavit, that he had asked the defendant to
12   hire his illegal alien friend and defendant responded that he wanted to first determine the work
13   status of another employee who was recently hospitalized (Defendant's Reply, p. 6; Government's
14   Opposition, p. 6).    That conversation corroborates that the environment at Pepe's Cabinets was one
15   where it was known that defendant employed illegal aliens. It further reveals defendant's openness
16   to hiring yet another illegal alien depending on the status of a current employee who had been
17   hospitalized.    All those factors are relevant to probable cause.

18       Also relevant to probable cause is the fact that defendant continued to employ Maria
19   Guadalupe Gamino-Perez ("Gamino") with full knowledge that she was an illegal alien based upon
20   the incident at Coast Guard Island on July 27, 2007, as set forth in the affidavit (Affidavit ¶¶ 19 &
21   20).    This Court should reject defendant's self-serving and false declarations, both signed on April
22   11, 2008, which were submitted for the purpose of improperly arguing that the magistrate judge
23   should not have relied upon that evidence.    In his first declaration (which was originally filed
24   unsigned with defendant's motion), defendant claims that he "did not see or hear anything during
25   this incident about Ms. Gamino-Perez's legal work status in the United States."    In his second
26   declaration, defendant claims that Officer Bermudez from the U.S. Coast Guard did not question
27   him about Ms. Gamino-Perez. The second declaration was filed in response to the ICE case agent's
28   declaration in which he documented his interview with Officer Bermudez on March 27, 2008 and

1   defendant's post-<u>Miranda</u> statements on November 6, 2007 in which he admittedly learned that Ms.

2   Gamino-Perez was an illegal alien when she provided the Coast Guard Island officers with her

3   Matricula (Mexico Consular ID) card and admitted to the officers that she does not have legal

4   documents to be in the United States.    In its opposition, the government stated that "[t]he case

5   agent's declaration is submitted for the sole purpose of showing that the statements made in

6   defendant's unsigned declaration are untrue. The government does not seek to use the case agent's

7   declaration to bolster the facts set forth in the search warrant affidavit" (Government's Opposition,

8   p. 8).

9       The government has evidence, based upon interviews of employees conducted on the day

10  the search warrant was executed, that defendant knew that his employees, including Ms. Gamino-

11  Perez, were illegal aliens when he hired them.    However, in opposing defendant's motion, the

12  government did not cite to this evidence because a reviewing court must stay within the four corners

13  of the search warrant affidavit in evaluating the magistrate judge's finding of probable cause. This

14  well-established principle of law also applies to the defendant. This Court should reject defendant's

15  attempts to create factual issues that fall outside the search warrant affidavit, including defendant's

16  self-serving declarations.

17      Based upon the totality of circumstances, including reasonable inferences, the magistrate

18  judge properly found probable cause. The magistrate judge's determination should be accorded

19  "great deference" (Government's Opposition, pp. 2-3).[1]

20

21

22

23

24

25      [1] In a footnote, defendant contends that the government has not carried its burden of
26  proving that its agents' reliance on the warrant was objectively reasonable, citing <u>United States v.
    Michaelian</u>, 803 F.2d 1042, 1048 (9th Cir. 1986) (Defendant's Reply, [p. 7 [footnote 4]).    The
27  search warrant and supporting affidavit, which the magistrate judge reviewed and approved,
    provide abundant proof that the agents' reliance on the warrant was objectively reasonable.  In
28  <u>Michaelian</u>, the Ninth Circuit rejected the defendant's arguments.

**III.  DEFENDANT HAS FAILED TO MEET THE THRESHOLD STANDARD FOR A FRANKS HEARING**

For the reasons previously discussed in the government's opposition, defendant has completely failed to meet the threshold standard for a *Franks* hearing (Government's Opposition, pp. 8-9).  After the government set forth the requisite standard for an evidentiary hearing under *Franks* in its opposition, including that defendant must provide an offer of proof that challenges *the veracity of the affiant and not that of his informant*, defendant now claims for the first time that he "has offered factual support for his allegations that challenge the veracity of the affiant" (Defendant's Reply, p. 7).  However, defendant has said nothing of merit that challenges the affiant's veracity.  For example, defendant alleges that the EDD forms for Pepe's Cabinets were signed by a paid preparer, yet the affiant did not include this fact in the affidavit (Defendant's Reply, p. 8).  As discussed above, the first EDD form was signed by defendant and the others were signed by a preparer on behalf of "Jose De Jesus Guzman, Pepe's Cabinets."  The remaining three allegations are equally frivolous and have already been discussed (Government's Opposition, pp. 5-9).

In his reply, defendant claims that "there is a possible additional material misstatement regarding the informant" regarding the statement in the affidavit that the informant had entered the country illegally (Defendant's Reply, p. 1 [footnote 1]).  At the time the affidavit was prepared in late October 2007, the affiant mistakenly thought that the cooperating witness had illegally entered the United States.  Upon later reviewing the evidence, it came to the affiant's attention that, although the cooperating witness was illegally present in the United States, he had initially presented a valid B1/B2 border-crossing card that permitted him to cross into the United States for up to 72 hours and stay within 25 miles of the border (75 miles near Tucson), but had a no work policy, all of which is fully documented in ICE Report No. 008 (Defendant's Reply [Exhibit I]).

1    The statement on the affidavit that the cooperating witness had illegally entered the United States,
2    rather than his correct status as being illegally present in the United States, was inadvertent and
3    immaterial to the issue of probable cause.[2]

4         Defendant makes an additional allegation that further illustrates the frivolity of his motion.
5    Defendant notes the "encounter between Officer Bermudez and Mr. Guzman-Baez is not mentioned
6    in any document that has been provided to Mr. Guzman-Baez in discovery, even though it includes
7    a statement by Mr. Guzman-Baez" (Defendant's Reply, p. 10). First, as defendant has
8    acknowledged, the case agent's interview with Officer Bermudez occurred on March 27, 2008, and
9    his declaration dated March 28, 2008 was filed with the government's opposition on March 28,
10   2008 in response to defendant's unsigned declaration. Second, as defendant is well aware,
11   defendant was provided with a copy of his post-Miranda statements with the initial discovery
12   package on November 26, 2007 (bate-stamped nos. 83-86).

13        Defendant further claims that the Coast Guard report indicates that it was Sergeant Marrow,
14   and not Officer Bermudez, who had asked Ms. Gamino-Perez for her identification (Defendant's
15   Reply, p. 10). The Coast Guard report states that Sergeant Marrow arrived on the scene after
16   Officer Bermudez, who had already stopped defendant's vehicle and made the initial contact.
17   Nothing in the report contradicts Officer Bermudez's statements.

18        Defendant seeks to create "a dispute of fact" regarding the Coast Guard incident for the
19   purpose of a *Franks* hearing (Reply, p. 11). However, defendant's self-serving efforts to create a
20   factual dispute does not satisfy the standard for a *Franks* hearing, including, inter alia, a deliberate
21   falsehood or reckless disregard for the truth by the affiant and that the challenged statements
22   regarding the Coast Guard incident are necessary to the finding of probable cause (Government's
23   Opposition, pp. 8-9). The purpose of a *Franks* hearing is not to conduct a fishing expedition or to
24   be used as a discovery tool.

25

26        [2] There is no basis for defendant's request that the government produce unredacted
27   versions of the reports attached to defendant's reply as Exhibits H and I. The only information
     that was redacted was the agency case number and information that could identify the
28   cooperating witness, such as his name, home address, and family information.

1    **IV. DEFENDANT'S MOTION FOR A BILL OF PARTICULARS SHOULD BE DENIED**

2          In continuing to demand a bill of particulars to compel the government to explain its theory

3    of harboring with respect to each of the eight harboring charges, defendant ignores the principles

4    of law governing bills of particular (Government's Opposition, pp. 9-12). In addition, defendant

5    does not dispute that he has received all of the voluminous discovery and other evidence in this

6    case, including two affidavits setting forth evidence to support the same charges in the criminal

7    complaint and search warrant (Government's Opposition, p. 11). The purposes of a bill of

8    particulars "are served if the indictment itself provides sufficient details of the charges and if the

9    Government provides full discovery to the defense." Id.; United States v. Long, 706 F.2d 1044,

10   1054 (9th Cir. 1983) (full discovery obviates the need for a bill of particulars); United States v.

11   Ayers, 924 F.2d 1468, 1483-84 (9th Cir. 1991) (affirming the denial of a motion for bill of

12   particulars where the indictment identified details of the charged crime and where the Government

13   provided significant discovery).

14         Defendant makes a general, unsupported argument that "neither the indictment nor the

15   discovery provided by the government gave him sufficient information about what he allegedly did

16   to 'conceal, harbor, and shield' each of the eight identified individuals (Defendant's Reply, p. 1).

17   If the indictment had not provided legally sufficient notice of the charges, defendant would have

18   moved to dismiss the indictment. It is telling that he has not. Further, it is not the government's

19   job to marshal all of the evidence pertaining to each of the harbored aliens, which is set forth in the

20   documents already furnished to the defendant. Nor is it the government's job to research the legal

21   principles governing harboring, and apply the facts to the law, on behalf of the defendant. The

22   question is *not* whether the information sought would be helpful to the defendant, but, instead,

23   whether it is necessary to the defense. See, e.g., United States v. Matos-Peralta, 691 F.Supp. 780,

24   791 (S.D.N.Y. 1988), citing United States v. Salazar, 485 F.2d 1272 (2d Cir. 1973) (a bill of

25   particulars is not a general investigative tool for the defense).[3]

26

27        [3] Defendant's reliance upon United States v. Mitchell, 744 F.2d 701, 705 (9th Cir. 1984),
     is misplaced (Defendant's Reply, p. 2). In Mitchell, the Ninth Circuit affirmed the district
28   court's denial of defendant's request for a bill of particulars.

Rather than expect the government to perform her duties, the defense counsel should "put the energy" that she devoted to making her frivolous motion "into the productive act" of marshaling the evidence and applying it to the harboring law (Defendant's Reply, p. 1).

## CONCLUSION

For the reasons set forth above and in the government's opposition, the United States respectfully submits that defendant's motion to suppress evidence or, alternatively, request for a *Franks* hearing should be denied.    Defendant's demand for a bill of particulars should also be denied.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

4/15/08
Dated

DEBORAH R. DOUGLAS
Assistant United States Attorney